SERENA A. BURNETT *et al.*

*v.*

JONAS LESTER *et al.*

1. PLEADING IN CHANCERY—*multifariousness.* One of the heirs of an estate filed a bill in chancery, in which it was alleged the widow had possession of all the moneys and credits belonging to the estate, in which she had only a life interest, and asking that she might be required to give security for the payment to complainant of her proper share of that fund. The bill also made the other heirs parties, and as against them, partition of certain lands of the estate was sought, and an injunction was asked against the executor to restrain him from cutting the timber upon the land: *Held,* these several subjects were distinct in their nature, and a bill in which they are embraced is multifarious.

2. WILLS—*life estate in personal property.* A will provided as follows: "I give and bequeath all of the rents and profits in my farm that I now own, in the town, county and State aforesaid, to my wife, Deliverance R. Lester, and also all my personal property, consisting of live stock, and also the interest on all moneys and credits due me at my death, so long as she remains my widow, except hereafter devised; and after her death or marriage, I wish the property and real estate to be equally divided between my

children," etc. *Held,* this was not an absolute gift of the personalty to the widow, but was intended as a bequest to her to be enjoyed during her life or widowhood, having reference as well to the live stock, moneys and credits, as to the use of the farm. They were not of that perishable character which forbade a life estate being created in them.

3. An exception to the rule that there may be a life estate in chattels, which are not of a perishable nature, and a limitation over, is in case of a bequest of specific things, as corn, hay and fruits, of which the use consists in the consumption. The gift of such articles for life, is, in most cases, of necessity, a gift of the absolute property, for the use and the property cannot exist separately.

4. TENANT FOR LIFE, *of personalty—of the proper disposition of the property.* It is a general principle, that where any interest short of absolute ownership is given in the general residue of personal estate, terms for years and other perishable funds of property which may be consumed in the use, are to be converted or invested, so as to produce a permanent capital, and the income thereof, only, is to go to the legatee for life.

5. So, in this case, the tenant for life should convert the live stock into money and save the principal for those who were to come to its enjoyment on her death or marriage.

6. SAME—*of requiring security to remainderman.* Where a life estate is created in personal property, with a limitation over, a court of chancery may require the legatee for life to give security to the remainderman that the fund shall not be wasted or misapplied.

WRIT OF ERROR to the Circuit Court of Champaign county; the Hon. A. J. GALLAGHER, Judge, presiding.

The principal question in this case arises upon the construction to be given to the will of Benjamin Lester, deceased. The portion of the will upon which the rights of the parties depend, is as follows:

" First—I give and bequeath all of the rents and profits in my farm that I now own, in the town, county and State aforesaid, to my wife, Deliverance R. Lester, and also all my personal property, consisting of live stock, and also the interest on all moneys and credits due me at my death, so long as she remains my widow, except hereafter devised; and after her death or

marriage, I wish the property and real estate to be equally divided between my children, except Horatio G. Lester, my son, to whom I bequeath ten dollars in cash, and no more. "

Messrs. LANGLEY & WOLF, for the plaintiffs in error.

We contend, in behalf of a part of the children of the testator, that the widow did not take an absolute ownership in the personalty—live stock, moneys, and choses in action—but only the use thereof during her life or widowhood.

The phrase " so long as she remains my widow," limits the enjoyment of the property to the time of her death or re-marriage. *Covenhaven* v. *Shuler*, 2 Paige, Chancery, 122.

The intention of the testator must govern in construing the will. *Boyd* v. *Strahan*, 36 Ill. 355.

This intention is to be found in the first clause of the will.

To say that the widow, by this clause, takes the " live stock, " absolutely, is to confine the phrase, " so long as she remains my widow," as a limitation to the devise of the " interest on all the moneys and credits due me at my death."

This construction, we think, depends wholly on the fact that the words, " so long as she remains my widow," are last in the series of expressions. But suppose the clause to be transposed, —the testator would then say : I give, devise and bequeath to my wife, Deliverance R. Lester, " so long as she remains my widow," etc., it would then apply to all parts of the devise, alike. This, we think, is what the testator meant and intended ; to give his wife only an estate for life, or widowhood, in all the property named in this clause.

A life estate may be created in personalty. 2 Kent's Commentaries, 352, side page.

The limitation over after the life interest has expired, is good. 2 Kent's Commentaries, 353, side page ; 45 Ill. 421.

This view of the testator's intention is strengthened by reference to the last part of the first clause of the will, which is a limitation over in these words, " and after her death or marriage I wish the property and real estate to be equally divided between

my children, except Horatio G. Lester, to whom I bequeath ten dollars in cash, and no more."

By "real estate," land is meant; by "property," personalty is intended, if it means anything, and the court must give it a meaning.

"That words occurring more than once in a will shall be presumed to be always used in the same sense, unless a contrary intention appear by the context, or unless the words be applied to a different subject. And on the same principle, when a testator uses an additional word or phrase, he must be presumed to have an additional meaning." Redfield on Wills, Rule 18, page 427.

Even though the property named in the first clause were, by that clause, given the widow, absolutely, this limitation over would so qualify the bequest as to give the widow only a life estate. *Smith* v. *Bell*, 6 Peters, U. S. 72; which was a bequest of all personal property to the wife, absolutely, with a provision that the remainder, after her decease, should go to the use of the testator's son. The court held that the last clause qualified the first, and showed the intent of the testator, that the widow had only a life estate.

This case was cited approvingly, and its reasoning adopted by the court, in *Boyd* v. *Strahan*, 36 Ill. 355.

And all the cases admit that a remainder, limited on such a bequest, would be valid, and the wife would take only for life. *Smith* v. *Bell, supra.*

If we are correct in the construction of this will, then it was the duty of the executor to have sold all of the personal property, and the proceeds of the sale, with the money on hand at the time of testator's death, and credits then due, to have properly invested, so that the interest or income from the fund might be paid to the widow for life, or during widowhood. *Covenhaven* v. *Shuler*, 2 Paige, Chancery 132.

And where the bequest for life includes articles necessarily consumed in the using, makes no difference; for the limitation over is good as to every species of chattels, money included.

Jarman on Wills, side page 794, and authorities cited in note. And where there is a general bequest for life, with remainder over, although it includes articles of this description as well as other property, the whole must be sold and converted into money, and the interest or income paid to the legatee for life. *Covenhaven* v. *Shuler*, 2 Paige, Chancery, 132 ; Roper on Legacies, 209.

If not specifically given, but generally, as goods and chattels with remainder over, the tenant for life is bound to convert them into money and save the principal for the remainderman. 2 Kent's Commentaries, 8th Ed. 440.

The remainderman has his remedy in chancery to compel the legatee for life to give security that the fund shall not be wasted or misapplied.   Story's Eq. Jur. sections 532, 533, 604, 845, 846, 1067 ; *Gill* v. *Tittle*, 14 Ala. 528 ; Tiffany & Bullard on Trusts, 620.

Messrs. AYRES & AYRES and Mr. C. B. SMITH, for the defendants in error, argued that the personal property vested in the widow, absolutely ; but that even if she took only a life estate, no sufficient ground was shown to require her to give security, citing 1 Roper on Legacies, 316.

Mr. CHIEF JUSTICE BREESE delivered the opinion of the Court:

This is a writ of error to the circuit court of Champaign county.

The record shows a bill of complaint filed by Serena A. Burnett and her husband, Hiram E. Burnett, against the widow and the other children of Benjamin Lester, deceased, setting forth that she is a child of the deceased, and that he made his last will and testament on the sixteenth day of October, 1866, in substance as follows :

First—I give and bequeath all of the rents and profits in my farm that I now own, in the town, county and State aforesaid, to my wife, Deliverance R. Lester, and also all my personal

property, consisting of live stock, and also the interest on all moneys and credits due me at my death, so long as she remains my widow, except hereafter devised; and after her death or marriage, to be equally divided between my children, except Horatio G. Lester, my son, to whom I bequeath ten dollars, in cash, and no more.

Second—I also bequeath at my death, to my daughter, Sarah A. Lester, and Nancy D. Lester, my grand-daughter, each one cow and twenty dollars in cash, to be taken out of the above property.

By the third clause of the will, his son, John B. Lester, was appointed executor.

The bill describes the land composing the farm, in all one hundred acres, twenty acres of which, one mile from the farm, was woodland. It is then alleged that the deceased, at the time of his death, owned personal property, consisting of live stock, farming implements, household goods, money, credits, and choses in action, amounting, as by inventory and appraisment bill filed by the executor, to more than two thousand six hundred dollars.

It is alleged the widow, with the consent of the executor, sold all the personal property at public sale, taking notes from the purchasers, payable to herself; that she still has the possession of those notes, except about three hundred dollars, which she has collected and applied to her own use, and that the proceeds of the sale amounted to more that two thousand dollars, which have been placed at the absolute disposal and control of the widow, and is liable to be wasted and lost to the heirs. It is alleged the widow has only a life estate in the personal property, and in the farm, and in the moneys due at the time of the death of the testator; and that the last two tracts of land described in the will are woodland, separate and apart from the farm, and alleges the widow has no interest in them of any kind.

The bill then charges that the executor is cutting and carrying away, for his own use, the best of the timber, and they claim that the heirs are tenants in common of those lands.

The bill prays for an accounting of these sales, and for a writ of injunction to restrain the widow from collecting, selling or transferring the notes taken for the sale of the personal property ; and for an injunction against the executor to restrain him from cutting the timber.   It further prays that the widow may be required to furnish security to the complainant for the payment to her of one-sixth part of all the moneys that may have come to her hands from the sale of the personal property, and also for one-sixth part of the whole amount derived or to be derived from that sale, when the same shall be ascertained, and for general relief.   The bill also prays that the woodland be partitioned among the heirs, or in default of partition, that it be sold, etc.

To this bill there was a general demurrer, which the court sustained, and dismissed the bill.

To reverse this decree, the record is brought here by writ of error.

It is a general rule in equity that two or more distinct subjects cannot be embraced in the same suit; if there be, the bill is obnoxious to the charge of multifariousness, and liable to a demurrer.

That this bill is in this condition, is apparent from a cursory reading of it, and of its several purposes and objects.   They are of such a nature as cannot, by the rules of correct pleading in equity, be united in the same suit.   The relief asked against the widow is that she give security for the sale notes, against the heirs, for a partition of the woodland, and as against the executor, that he be enjoined from cutting the timber upon this land.   These several subjects are distinct in their nature, having no connection with each other, and consequently, a bill in which they are embraced is multifarious, and so liable to demurrer ; and the circuit court decided correctly in sustaining the demurrer and dismissing the bill, and that decree must be affirmed.

But the proper construction of this will, as to the rights of the widow, has been fully argued here, and it is well to settle it now, as thereby future litigation may be prevented.

In our view of this will, the intention of the testator was, as we gather it from the words used, to limit the enjoyment of this property to the widow, so long as she remained a widow, and no longer. The rents and profits of the farm, all his personal property, consisting of live stock, and the interest on all moneys and credits, due the testator at the time of his death, are given and bequeathed to his wife, Deliverance R. Lester, in one sentence, ending thus: " So long as she remains my widow, except hereafter devised." And there is a remainder over, created as follows: "And after her death or marriage, I wish the property and real estate to be equally divided between my children," &c.

That the widow took, by this bequest, any thing more than a life estate in this property, including the live stock, cannot be maintained.

It seems to us the obvious intention of the testator was to give his widow merely the use and enjoyment of the rents and profits of the farm for her support, and of the personal property and moneys and credits, for, if such was not his intention, if he intended an absolute gift, why did he provide, after her death or marriage, that the property and real estate should be equally divided between his children ? In disposing of the remainder, he, at the same time, gives character to the bequest to his wife, for, if the property was her's, absolutely, there could be no remainder subject to distribution. The testator evidently supposed there would be property other than real estate subject to division after his wife's death or marriage, else the will would not have contained such a provision. The term " property," in connection with " real estate," as used by the testator, can have reference alone to personal property, and it must, by its own force, include all his personal property, live stock as well as money and credits. The design of the testator was, evidently, to make ample provision for his wife's support while she lived and remained his widow. In case of her marriage, his intention is no less expressly declared that, in that event, the property and farm should be divided among the children, leaving

her dependent upon what the statute would allow her under the circumstances, and that would be the use of the homestead during her life.

The case of *Smith* v. *Bell*, 6 Peters, 68, cited by plaintiffs in error, supports this view.    The will in that case was as follows: " I give to my wife, Elizabeth Goodwin, all my personal estate whatsoever and wheresoever, and of what nature, kind, and quality soever, after payment of my debts, etc. which personal estate I give and bequeath unto my said wife, Elizabeth Goodwin, to and for her own use and benefit and disposal, absolutely; the remainder of said estate, after her decease, to be for the use of the said Jesse Goodwin."    Jesse Goodwin was the son of the testator, to whom he had bequeathed, by the will, a young sorrel gelding and a feather bed.

Mrs. Goodwin married Robert Bell, and without disposing of the personal property, which was negro slaves, died. Bell claimed to hold the property as his own, under the will bequeathing it absolutely to his wife, then the widow of the testator.    Jesse Goodwin sold his interest in the property to Smith, who brought an action of trover against Bell, for the negroes.

MARSHALL, Chief Justice, in delivering the opinion of the court, said it must be admitted that words could not have been employed better fitted to give the whole personal estate absolutely to the wife, or which could more clearly express that intention.    But the testator proceeds:    " The remainder of said estate, after her decease, to be for the use of the said Jesse Goodwin."

These words, the court say, give the remainder of the estate, after his wife's decease, to the son, with as much clearness as the preceding words give the whole estate to his wife.    They manifest the intention of the testator to make a future provision for his son as clearly as the first part of the bequest manifests his intention to make an immediate provision for his wife.

And further on, the court say, " both clauses are equally the words of the testator, are equally binding, and equally claim the attention of those who may construe the will.    We are no

more at liberty to disregard the last member of the sentence than the first. No rule is better settled than that the whole will is to be taken together, and is to be so construed as to give effect, if it be possible, to the whole."

In the will before us there are no words of absolute gift to the widow, and the words used, if implying such a gift, no more clearly express the intention of the testator than those used by him in disposing of the property on the death or marriage of his widow. They equally declare the intention of the testator. Suppose the words in the clause are transposed, and the will read thus : I give and bequeath to my wife, Deliverance R. Lester, so long as she remains my widow, the rents and profits of my farm, also all of my personal property, consisting of live stock; also the interest on all moneys and credits due me ; and after her death or marriage, I wish the property and real estate to be equally divided between my children, could there be any rational doubt about the intention of the testator ? He had, in this testamentary disposition of his estate, two objects in view ; first, the support of his wife during widowhood; and next, some provision for his children after her decease or marriage. They were equally proper objects of his bounty, and his affection would prompt him to give something to both. This he has attempted to do by the will. He has made his wife and widow comfortable by bestowing the use of all of it upon her, but at her death or marriage he has been equally anxious that his children should enjoy it.

We regard this case, in principle, like the case of *Smith* v. *Bell, supra,* though less strong for the defendants in error than that case for the defendant in error therein.

There being, then, but a life estate created for the benefit of the widow, a limitation over to the children of the testator is valid—2 Comstock's Kent, 432, 433—if the chattels be not of a perishable nature. But there is an exception to the rule in case of a bequest of specific things, as corn, hay, and fruits, of which the use consists in the consumption. The gift of such

articles for life, is in most cases, of necessity, a gift of the absolute property, for the use and the property cannot exist separately. Ib. 434.

What, then, was the duty of the tenant for life with regard to this personal property, consisting of live stock? That is prescribed in the same book, and by all the authorities; the tenant for life was bound to convert them into money and save the principal for those who were to come to its enjoyment on her death or marriage. It is a general principle that when any interest, short of absolute ownership, is given in the general residue of personal estate, terms for years, and other perishable funds of property which may be consumed in the use are to be converted or invested, so as to produce a permanent capital, and the income thereof, only, is to go to the legatee for life. Ib. 436.

It was a rule in the English chancery, but now overruled, that the remainder man could, in all cases, call for security from the tenant for life, that the property should be forthcoming at his decease, but even there, security may now be required in a case of real danger that the property may be wasted, secreted or destroyed. And when there is a general bequest of a residue for life, with remainder over, the practice now is, to have the property sold and converted into money by the executor, and the proceeds safely invested, and the interest thereof paid to the legatee for life. *Howe* v. *Earl of Dartmouth,* 7 Vesey, 137.

In this country the legatee for life can be required to give security in such cases, as will be seen by the numerous cases referred to in note (f) page 437, 2 Comst. Kent.

On a proper bill filed by these complainants, the court might require the widow to give to the children security that the notes taken by her on the sale of the live stock should not be wasted, or the money and choses in action misapplied, but not on this bill, the demurrer to which was, for the reason we have given, properly sustained, and the decree, in that respect, is affirmed.

*Decree affirmed.*