### LEONARD, executor, *v.* OWEN.

1. Where a testator devised and bequeathed to his wife for life, land, horses, mules, cattle, hogs, plantation tools, vehicles, and other personalty, without any restriction whatever upon the right or the use, save that his son was to have all the necessary expenses of his education, board and clothing paid out of the proceeds of the farm and stock; and the will directed that after the death of the widow all the property thus given to her for life be sold by the executor, and the proceeds of the sale divided among the testator's children, the executor had no right to sell the natural increase of any of the animals so bequeathed, but did have the right to sell horses and mules received by the widow in exchange for horses and mules which the testator left to her, the executor electing to treat exchanges made by her as investments of the capital which would or might have come to him specifically for administration under the will in behalf of the remaindermen. Although her conversion of the remainder estate in the *corpus* was tortious, yet the executor could waive the tort, ratify the exchanges and take the proceeds, if to do so would be beneficial to the estate which he represents.
2. As to the tools, vehicles, and other personalty found upon the land after the death of the widow, the executor would have the right to sell such of them as were the identical articles disposed of by the will, or received in exchange therefor, or purchased with the proceeds of the sale thereof; but would have no right to sell such articles as were otherwise acquired by the widow, or the person in possession after her death and claiming the same.

April 9, 1894. Argued at the last term.

Claim. Before Judge BUTT. Talbot superior court. March term, 1893.

PEABODY, BRANNON, HATCHER & MARTIN, J. H. WORRILL and J. H. McGEHEE, for plaintiff.

LUMPKIN, Justice.

Certain mules and a horse, some cattle, hogs, wagons, and other personalty which need not be more particularly mentioned, were advertised for sale by Leonard as the executor of James T. Owen, and a claim was interposed by Albert Owen, a son of the testator. Upon the trial of the issue thus made, a nonsuit was granted against the executor, and he excepted.

By the third item of the will of James T. Owen, he devised to his wife, during her natural life, certain land, and also bequeathed to her his entire stock of horses, mules, cattle and hogs, certain vehicles and harness, household and kitchen furniture, plantation tools, etc. These provisions were made for her in lieu of dower. It is evident, from the eighth item of the will, that the personalty covered by the above mentioned bequest was given to the wife during her life only, this item, after providing that certain advancements to the testator's children should be accounted for, directing that after her death, " all the property given to her in the 3d item of this will be sold by my executor, and the proceeds of said sale be equally divided among all my children." In another item, the testator directed that his son, Albert, should " have all his necessary expenses for education, board and clothing, paid out of the proceeds of the farm and stock mentioned above."

It appears from the evidence that, after the testator's death, the executor delivered to the widow one mare, two horse colts, and certain mules, cattle, hogs, vehicles, plantation tools, and other personalty. She lived eleven years, during which time her son Albert, with her consent, traded off all the mules and horses delivered to her by the executor, except one. That one the executor sold without objection. It is probable that several successive exchanges were made between the time of the testator's death and that of Mrs. Owen, but all of them

were made with her knowledge and approbation.   After her death, the executor found certain cattle and hogs upon the place, but did not know whether any of them were the same he had delivered to the widow.   His information was that they were the increase of those originally turned over to her.   As to the other personal property in controversy, the record does not disclose whether it was the same originally delivered to Mrs. Owen, or had been otherwise acquired by her.

1.  We think, in the first place, that the executor had no right to sell the natural increase of the cattle and hogs, but that they belonged absolutely to the widow, and passed, at her death, to her representatives.   Horry *et al. v.* Glover *et al.*, 2 Hill's Ch. (S. Car.) 515 ; Dunbar's Ex'rs *v.* Woodcock's Ex'r, 10 Leigh (Va.), 628.   These cases, it is true, are authority also for the proposition that where a life-tenant takes the increase of animals, there is a corresponding obligation to keep up the stock to its original number; but under section 2256 of our code, the natural increase belonged to the life-tenant, without such condition.   See, also, Saunders *et al. v.* Haughton *et al.*, 8 Ired. Eq. (N. C.) 217.

We think, however, the executor did have the right to sell the horses and mules received by the widow in exchange for similar animals which the testator had left to her.   There can be no doubt that a life-estate may be created in live stock, it being property not strictly consumable in the use.   See the cases above cited, and also, Burnett *et al. v.* Lester *et al.*, 53 Ill. 325, Holman's Appeal, 24 Pa. St. 178, and Flowers *v.* Franklin, 5 Watts (Pa.), 265.   If the widow had died shortly after the death of the testator, the executor could, and doubtless would, have sold the identical horses and mules he had delivered to her.   She lived many years, however, and the exchanges above mentioned took place.   Had the farm and the live stock been left to the widow by a will

contemplating that the testator's estate should be kept together, used, managed and improved by the widow for the benefit of herself and children, with remainder over to the children at the death of the widow—that is, if a trust had been imposed upon her to maintain the farm as a going concern, as in the cases of Flowers v. Franklin, *supra*, and Lynde v. Eastabrooke, 7 Allen, 68,— it may be that the widow would have had a legal right to dispose of the live stock when the animals became impaired by age or use, and to replace them with others more suitable for the purposes intended; and in that event, the animals on hand at the time of her death would, of course, form a part of the estate in remainder. We do not understand that the will in the present case is of this kind. It imposes upon the widow none of the duties above indicated. The provision that the testator's son, Albert, shall have his education, board and clothing paid for out of the proceeds of the farm and stock, is hardly sufficient to bring this will within the same class as those referred to in the two cases last cited. We think, therefore, that the conversion by the widow of the mules and horses was tortious—not in the sense of being morally wrong, but as being unauthorized under the law applicable to a will of the kind with which we are now dealing. It was, however, the right of the executor, if he considered it beneficial to the estate, to waive the tort and to treat the exchanges made by the widow as investments of the *corpus* which, but for such exchanges, would, or might, have come to him specifically for administration under the will in behalf of the remaindermen.

2. The evidence, as already stated, does not disclose how the tools, vehicles, etc., etc., found upon the premises after the death of the widow, were acquired or to whom they belonged. If they were the identical articles disposed of by the will, or were received in exchange

for such articles, or purchased with the proceeds of the sale of the same, the executor has unquestionably the right to sell them as a part of the testator's estate. If these articles were otherwise acquired by the widow, or if they belonged to her son Albert, who was in possession of the land after her death and who claimed them, the executor has no right to sell the same. If these articles are of sufficient value to be worth litigating over, the question of title can be settled at the next trial.     *Judgment reversed.*