Syllabus.

## EMMA NAPOLEON WILCOX, H. H. WALKER, WILLIAM N. STEWART AND HAWAIIAN TRUST COMPANY, LIMITED, AN HAWAIIAN CORPORATION, EXECUTRIX AND EXECUTORS AND TRUSTEES UNDER THE WILL OF ALBERT SPENCER WILCOX, DECEASED, *v.* EMMA NAPOLEON WILCOX, ET AL.

### No. 1349.

ERROR TO CIRCUIT JUDGE FIFTH CIRCUIT.
HON. W. C. ACHI, JR., JUDGE.

SUBMITTED NOVEMBER 21, 1921.          DECIDED DECEMBER 8, 1921.

KEMP AND EDINGS, JJ., AND CIRCUIT JUDGE FRANKLIN IN PLACE OF COKE, C. J., ABSENT.

WILLS—*residuary trust estate—income from death of testator distributed in absence of provisions in will showing different intention.*

> When a testator gives the residue of his estate to trustees and charges them with the duty of paying the income thereof to certain persons and no time is prescribed in the will for the commencement of the enjoyment of the income of such residue they are entitled to the income of the clear residue as afterwards ascertained from the date of the death of the testator and the fact that the executors are entitled to and do retain the residuary estate in their hands until the close of administration can make no difference in the status of income accruing thereon pending the administration.

SAME—*same—ordinary current taxes payable out of income.*

> Ordinary current taxes chargeable to a trust estate are as a general rule payable out of the income of the trust estate.

SAME—*same—income tax on profits from sale of portions of trust estate.*

> An income tax levied and collected upon profits realized by a trust estate from the sale of stocks owned by the trust estate is not an ordinary current tax.

In this opinion where the petitioners would properly be referred to as executrix and executors they will for the sake of brevity be referred to as executors.

The will and codicil of Albert Spencer Wilcox, after appointing the above named petitioners executors and trustees and providing for the payment of his just debts and funeral expenses, continues:

"Immediately upon and continuing after the date of my death, until my trustees shall receive and begin their administration of my residuary trust estate and until the income of said residuary trust estate shall be available and be regularly paid, in lieu hereof, under the provisions of paragraph 'third' of this will, I direct my executors to set apart and pay the following specific monthly sums to the persons therein named, to receive the same for their support, maintenance and disposition, preferably out of income, but resorting to principal if necessary, to wit:

"(1) To my wife, Emma Napoleon Wilcox, if she shall survive me, but to cease on her death, the sum of one thousand dollars ($1,000) per month" (raised by the codicil to $2500 per month);

"(2) To Ethel K. Mahelona Wilcox, daughter of my said wife by her former marriage to Samuel Mahelona, and now the wife of Gaylord P. Wilcox, the sum of one hundred and fifty dollars ($150) per month; or in case of her death, then to her lawful issue by right of representation;

"(3) To Allen C. K. Mahelona, son of my said wife by her former marriage to said Samuel Mahelona (now also known as Allen Wilcox) the sum of one hundred dollars ($100) per month; or in case of his death, then to his lawful issue by right of representation" (raised by the codicil to $150 per month);

"(4) To Mary Kaui (daughter of Mary Niu) now the wife of Archibald Andrew, the sum of one hundred and fifty dollars ($150) per month; or in case of her death, then to her lawful issue by right of representation.

"Subject only to the foregoing special provisions, I hereby give, devise and bequeath unto my trustees all of my property and estate, real, personal and mixed of every

kind and description and wheresoever situate, of which I shall die seized or possessed or to which I may be entitled at the time of my death, to have, hold, use and apply the same in trust for the following uses and purposes and according to the following terms, that is to say:

"First. Immediately upon my death to transfer and deliver to my said wife, Emma Napoleon Wilcox, if she shall survive me, as her own absolutely, all of my household furniture * * *. Should my said wife not survive me, this devise shall lapse, and said property shall become part of the residuary estate.

"Second. Also, immediately upon my death, to set apart and extend for the free use, occupancy, benefit and enjoyment of my said wife, Emma Napoleon Wilcox, if she shall survive me, and so long as she shall live, the several lands, with the improvements thereon, comprising my two separate residence premises at Lihue and at Hanalei, on the Island of Kauai, namely:" (Here follows a description of the two residence premises and provision for the partition thereof after the death of testator's wife Emma Napoleon Wilcox, or if she should not survive him upon his death.) By the codicil the paragraph last above is revoked and the widow given a fee simple estate in said premises.

"Third. All of the residue and remainder of my estate shall be held by my trustees under this will as a capital fund for and during the joint lives of the said Emma Napoleon Wilcox, Ethel K. Mahelona Wilcox, Allen C. K. Mahelona, Mary Kaui Andrew, and any child or children of my marriage with said Emma Napoleon Wilcox, and until the death of the last survivor of them, and thereupon my trustees shall make final division and distribution thereof as hereinafter provided.

"The trust by this paragraph created with respect to my residuary estate shall be administered during the continuance thereof, according to the following specific provisions, that is to say:

"My trustees shall hold, manage and control the property thereof in such manner as in their discretion and best judgment shall seem for the best interests of the trust estate as a whole and of all of the beneficiaries thereof;

with full power," etc. (Here follow provisions as to the authority of the trustees to sell, manage, etc.)

"They shall receive and collect the income of said residuary trust estate and after the payment therefrom from time to time of the costs of management, maintenance and administration of the trust estate, and also the taxes and the general expenses of maintenance and. upkeep of the buildings, fences, and other improvements on said homestead residence premises at Lihue and at Hanalei, during the lifetime of my said wife, as my trustees shall in their discretion deem proper therefor, and also after the payment of a reasonable commission to themselves as compensation for their services hereunder, to divide and apply the net income thereof as follows:

"First.   Until the final payment in full of all of the pecuniary bequests in this will hereinbefore denominated '(a)' to '(h)' inclusive, to set apart therefrom, as a first and preferred charge or requirement to be met out of the same, the following yearly sums to be paid in monthly instalments to the following persons, to-wit:

"(1) To ·my said wife, Emma Napoleon Wilcox, if she shall survive me, and so long as she shall live, the sum of twelve thousand dollars ($12,000) per annum" (raised by the codicil to $30,000 per annum);

"(2) To the said Ethel K. Mahelona Wilcox, or in case of her death, then to her lawful issue by right of representation, during the continuance of this trust, the sum of eighteen hundred dollars ($1800) per annum;

"(3) To the said Mary Kaui Andrew, or in case of her death, then to her lawful issue by right of representation, during the continuance of this trust, the sum of eighteen hundred dollars ($1800) per annum;

"(4) To the said Allen C. K. Mahelona, or in case of his death, then to his lawful issue by right of representation, .during the continuance of this trust, the sum of twelve hundred dollars ($1200) per annum" (raised by the codicil to $1800 per annum);

"Second, after the said fixed annual preferred payments of income shall be made or set apart each year, one-fifth (1/5) of the remaining net income of this trust

estate shall be set apart by my trustees and annually or oftener divided and paid in equal shares among all of my own nephews and nieces during the continuance of this trust, including by right of representation, the lawful issue of any of them who shall die or have died;

"Third, the remaining four-fifths (4/5) of said net income (after said fixed annual preferred payments of income shall have been set apart as aforesaid) shall be divided and applied as follows: Until the final payment in full of all said pecuniary bequests hereinafter denominated '(a)' to '(h)' inclusive, said four-fifths of income shall be subject to be applied by my trustees in their absolute discretion and judgment toward the payment of the following pecuniary bequests, either any one or more of them in full in preference or priority over any other or others, or any one or more in part, or pro rata among all or any of them, as the trustees may decide, and the trustees may accordingly at any time or times and from time to time during the continuance of this trust, take, use and apply the same, in whole or in part, or hold or use any part of the same for equalization of said fixed annual preferred payments of income. The pecuniary bequests herein mentioned are the following:"   (Here follows a list of the pecuniary bequests "(a)" to "(h)" inclusive, amounting approximately to $50,000.)

"Fourth, after the full and final payment of all of said pecuniary bequests hereinabove denominated '(a)' to '(h)' inclusive, all of the said four-fifths portion of net income shall be divided and paid by my trustees annually or oftener as follows: One-half thereof (equal to two-fifths of the entire net income from the whole residuary trust estate) to my said wife, Emma Napoleon Wilcox, so long as she shall live; and the other one-half thereof (also equal to two-fifths of the entire net income from the whole residuary trust estate) shall be paid in equal shares to the said Ethel K. Mahelona Wilcox, Allen C. K. Mahelona and Mary Kaui Andrew, and any child or children of my marriage with the said Emma Napoleon Wilcox, the lawful issue of any of them who may die or have died to take the share of the deceased parent by right of representation.

"Fifth, upon and after the death of my said wife (or should she not survive me, then upon and after my own death), and after all of the said pecuniary legacies denominated as '(a)' to '(h)' inclusive have been paid in full as aforesaid, all of said four-fifths portion of the net income from said residuary estate shall be divided and paid in equal shares to the said Ethel K. Mahelona Wilcox, Allen C. K. Mahelona, and Mary Kaui Andrew, and any child or children of my marriage with said Emma Napoleon Wilcox, the lawful issue of any of them who may die or have died to take the share of the deceased parent by right of representation."

The further provisions of the will are not pertinent to the matter now before us. The testator died July 7, 1919, and his will and codicil were duly admitted to probate in the fifth circuit and the above named petitioners were duly appointed executors thereunder. Deceased left surviving him his widow, Emma Napoleon Wilcox, and two step-children, Ethel K. Mahelona Wilcox and Allen C. K. Mahelona, also known as Allen Wilcox, and an adopted daughter, Mary Kaui Andrew. He also left surviving him a number of nephews and nieces, all of whom are beneficiaries under the will and codicil either by name or by description. A further class of beneficiaries consists of the minor children of the nephews and nieces to whom the trust estate will be distributed upon the termination of the trust. The petitioners herein as executors filed an account in the probate court on May 18, 1920, and prayed for a partial distribution of the assets of the estate. On June 29, 1920, the court approved said account and directed the petitioners as executors to deliver over to themselves as trustees certain personalty of the estate, to wit, stocks, bonds and notes amounting to $4,250,000, and also cash in the sum of $200,000, this latter being income accruing after the death of the testator and received by the petitioners as executors. The actual transfer was made July 7, 1920. The petitioners as

executors at the time of the partial distribution to the trustees retained a portion of the property of the estate to pay the federal estate and territorial inheritance taxes and now hold principal of the estate amounting to about $300,000, and accumulated income of the estate amounting to about $97,000. All of the taxes have been paid. The petitioners as executors made the specific monthly payments of $2500 and $150 respectively to the widow and the three children from July 7, 1919, to July 7, 1920, the date of the transfer to the trustees, but have not made any since that date. The closing of the administration and the final account of the executors and final distribution of the remaining assets of the estate will be post-. poned to some time in 1922 owing to ancillary administration in California. Petitioners as trustees have paid from the income of the trust estate the taxes and expenses of maintenance, repairs, etc., of the Lihue and Hanalei residence premises, and from July 7, 1920, have made the same monthly payments to the widow and three children up to October 7, 1920, since which date they have not made any such monthly payments to any of said four respondents but have distributed the net income of the trust estate to the beneficiaries named in the will without first paying said specific monthly sums, one-fifth thereof to the testator's nephews and nieces; two-fifths thereof to the widow and two-fifths thereof to the three children. They are holding the $200,000 paid to them by the executors on July 7, 1920, pending an adjudication as to whether it is to be treated as income and distributed or as principal of the trust estate. Some time during the year 1920 the petitioners as executors, in order to secure funds with which to pay the federal estate and territorial inheritance taxes, sold stocks belonging to the trust estate for which they realized a sum $214,370.77 in excess of the appraised value thereof, said appraised value being the

market value of said stocks on the date of testator's death. On March 15, 1921, the petitioners as executors filed a federal income tax return on behalf of the estate covering the 1920 income, showing a total gross income of $438,251.47 including the $214,370.77 profit on the sale of stocks. The return further shows that the total federal income tax was $219,796.98 and that if there had been no profit from the sale of investments the trustees would have been compelled to pay a tax of only $72,746.42, so that the inclusion of the said sum of $214,370.77, being profit from the sale of stocks, increased the income tax due and payable by the estate by the sum of $147,050.56.

In view of all of the foregoing the petitioners in their capacities both as executors and as trustees brought their bill for instructions in the fifth circuit court joining all parties interested and asked for the instruction of the court upon five questions, two of which are as follows:

"(a) Should the aforesaid two hundred thousand dollars paid as aforesaid by said executors to said trustees on July 7, 1920, and also any other additional accumulated income so paid by said executors to said trustees on the final closing of the probate administration of said estate and the final distribution of said estate, be considered and treated by said trustees as income of said trust estate to be paid out to the persons who are entitled to receive the income of said trust estate or as principal of said trust estate to be held as said principal by said trustees?"

"(e) Is a gain realized from the sale of an investment, capital to be held by the trustees or income to be paid to the life tenants of the estate, and if it is held to be capital should petitioners, as executors, pay the federal income tax for the calendar year 1920 out of the principal or out of the income of the estate, or should they pay said income tax partially out of the principal and partially out of income of said estate, and if so what proportion of the tax should each bear?"

The matter was presented by all of the parties before

the circuit judge of the fifth circuit court by evidence, oral arguments and briefs, after which a decree was rendered in part as follows:

"(a)    The two hundred thousand dollars ($200,000) paid by said executors to said trustees on July 7, 1920, being accumulated income from personal property received by said executors prior to said date, and also any other additional accumulated income so paid by said executors to said trustees on the final closing of the probate administration of said estate and the final distribution of said estate, shall be considered and treated by said trustees as income of said trust estate and paid out to the persons who are entitled to receive the income of said trust estate; and that * * *

"(e) The gain realized from the sale by said executors of investments owned by said estate at a profit, being the excess of the selling prices of said investments over their values on July 7, 1919, the date of the death of the testator, amounting to two hundred fourteen thousand three hundred seventy and 77/100 dollars ($214,370.77) is capital and not income and should be held as such by the trustees, and that portion of the federal income tax for the calendar year 1920 payable by said estate caused by the said profits realized by said sale, to wit, one hundred forty-seven thousand fifty and 56/100 dollars ($147,050.56) should be charged against and paid out of the principal of said estate, and the remainder of the said federal income tax for the calendar year 1920 payable by said estate, to wit, seventy-two thousand seven hundred forty-six and 42/100 dollars ($72,746.42) should be charged against and paid out of the income of said estate by said executors."

With the questions B, C and D and the decree rendered thereon the remaindermen are not concerned but they have brought their writ of error alleging error in paragraphs A and E of the decree, the assignments of error being as follows:

(1) "That the circuit judge erred in his decree heretofore and on, to wit: the 14th day of June, 1921, rendered and filed by him in that he failed to order, adjudge and

decree that the sum of two hundred thousand dollars ($200,000) paid by the executors to the trustees on July 7, 1920, together with any other accumulated income so paid by said executors to said trustees on the final closing of the probate administration of the estate of A. S. Wilcox, deceased, and the final distribution of said estate should be considered, treated and held by said trustees as principal of the said estate, and in that he did order, adjudge and decree that the said sum of two hundred thousand dollars ($200,000) paid by the said executors to the said trustees on said July 7, 1920, together with any other accumulated income so paid by said executors to said trustees on the final closing of the probate administration of the said estate, and the final distribution of said estate, should be considered and treated by said trustees as income of said trust estate, and paid out to the persons who are entitled to receive the income of said trust estate."

(2) "That the circuit judge erred in his decree heretofore and on, to wit: the 14th day of June, 1921, rendered and filed by him in the above entitled cause in that he failed to order, adjudge and decree that the executors of the said estate of A. S. Wilcox, deceased, should pay the federal income tax for the calendar year 1920 wholly out of the income from the said estate, and in that he did order, adjudge and decree that that portion of the federal income tax for the calendar year 1920, payable by said estate caused by the gain realized from the sale at a profit by said executors of investments owned by said estate (said profits amounting to the sum of $214,370.77) to wit: one hundred forty-seven thousand fifty and 56/100 dollars ($147,050.56) should be charged against and paid out of the principal of said estate."

In the court below all of the parties conceded that the $214,370.77 profit realized by the executors from the sale of stocks owned by the estate at an advance over the value of said stocks at the testator's death is capital and not income and the circuit judge so found—a finding with which of course the remaindermen are satisfied.

We will consider the two assignments of error in their

order: First. Is the accumulated income which the executors turned over to the trustees on July 7, 1920, and such other income as they may hereafter turn over to the trustees to be treated by them as income and distributed or should it be held as part of the corpus or capital fund of the estate? When a testator gives the residue of his estate to trustees and charges them with the duty of paying the income thereof to certain named persons and no time is prescribed in the will for the commencement of the enjoyment of the income of such residue they are entitled to the income of the clear residue as afterwards ascertained from the date of the death of the testator and the fact that the executors are entitled to and do retain the residuary estate in their hands until the close of the administration can make no difference in the status of income accruing thereon pending the administration. If therefore the payment or delivery of the residuary estate to the trustees by the executors be postponed until the close of administration and the executors have in the mean time collected the income earned by the securities in which the residuary estate is invested and delivered it together with the securities to the trustees they must in the absence of provisions in the will indicating that the testator had a different intention treat such sum so delivered to them as income and distribute it in accordance with the terms of the will. (*Green* v. *Green*, 30 N. J. Eq. 451; *Bancroft* v. *Security Co.*, 74 Conn. 218, 50 Atl. 735; *Green* v. *Blackwell*, 32 N. J. Eq. 768; *Lovering* v. *Minot*, 9 Cush, 151; *Minot* v. *Amory* et al., 2 Cush. 377; *Sargent* v. *Sargent*, 103 Mass. 297; *Cushing* v. *Burrell*, 137 Mass. 21; *Weld* v. *Putnam*, 70 Me. 209.) There is nothing in *Fitchie* v. *Brown*, 18 Haw. 52, or *Campbell Est.* v. *Campbell-Parker*, 18 Haw. 34, inconsistent with the rule above announced. In *Fitchie* v. *Brown* the provisions of the will are so entirely different from the provi-

sions in this case as to require no comment. The provisions of the James Campbell will differ in material respects from the provisions of the will in the present case, and while the syllabus in the *Campbell* case, cited by the remaindermen, to the effect that "a provision in the will that income be paid by trustees to the widow and children does not entitle the widow and children to income beginning with the death of the testator but only from and after the discharge of the executors," standing alone gives color to the argument of the remaindermen, an examination of the will there under consideration destroys the effect of this argument. In the Campbell will the testator directed that after the payment of his debts, etc., and the aforesaid provision for his wife (payment to her of such amount as the probate judge would approve for maintenance), his executors should obtain a decree of distribution of his estate. He then devised and bequeathed to the trustees named in the will who should be living at the date of such decree all of the rest, residue and remainder of his estate not otherwise given, etc., in trust. The will then continues: "With respect to all property which shall be so distributed to them, * * * I direct my trustees aforesaid to reduce it to possession * * * and to collect all the rents, issues, profits, income and revenue thereof, * * * to invest * * * all moneys that shall come to their hands by virtue hereof and which are not otherwise herein specifically bequeathed, assigned or appropriated." The statement of the law as contained in the syllabus above quoted must be read in the light of the provisions of the will the court was then considering. When so considered we find nothing inconsistent with the rule which we have announced.

We must therefore examine the will to ascertain whether it fixes the time when the life tenants shall begin the enjoyment of the income for if it does the will must

govern. The will does not in express terms fix such a time but the remaindermen claim that certain provisions of the will, read in the light of the record in this case, do fix such a time by necessary implication and that the time so fixed is the date when the estate was turned over to the trustees. They first call attention to the provisions of the will by which the testator provided for the payment to his wife, his two stepchildren and his adopted daughter of specific sums monthly, and particularly the following: "Immediately upon and continuing after the date of my death until my trustees shall receive and begin their administration of my residuary trust estate and until the income of such residuary trust estate shall be available and be regularly paid in lieu hereof under the provisions of paragraph third of this will I direct my executors to set apart and pay the following specific monthly sums," etc. From this it is argued that it was the testator's intention that the division and application of the income by the trustees is to be "in lieu" of the specific monthly payments required to be made to the wife and children by the executors and that this provision is inconsistent with the idea that they were to share in the income as such until the trustees should receive and begin their administration of the residuary trust estate. Other provisions in the will are stressed by the remaindermen but we do not consider it necessary to refer to them as in our opinion they have no bearing on the question.

On the other hand the life tenants point out that the testator, immediately following the provision for the payment to his wife and children of the specific monthly sums, provided that "subject only to the foregoing special provisions I hereby give, devise and bequeath unto my trustees all of my property and estate, real, personal and mixed, of every kind and description and wheresoever situate, of which I shall die seized or possessed, or to

which I may be entitled at the time of my death, to have and to hold, use and apply the same in trust for the following uses and purposes and according to the following terms." From this they argue that what the testator gave to his trustees in trust consists only of the estate of which he should die seized and possessed or to which he might be entitled at the time of his death. They then point out that the next provision of the will required the trustees to make certain disposition of portions of his estate, those portions being certain household furniture and certain specified real estate at Lihue and Hanalei. The next provision of the will is that "all of the residue and remainder of my estate shall be held by my trustees under this will as a capital fund" for and during the lives of certain persons therein named and until the death of the last survivor of them and directs the trustees to divide and apply the net income thereof in certain proportions to certain persons named and described therein. It is the claim of the life tenants that the provisions to which we have just referred make it clear that the capital fund, the income of which was to be paid to the life tenants, was fixed at the date of the death of the testator and consists only of the property of which he died seized or possessed or to which he was entitled at the time of his death and that this would not include any part of the income which accrued after his death.

The provisions of the will to which we have just referred so clearly indicate that it was the intention of the testator that the capital fund to be finally distributed should consist only of the property of which he died seized or possessed or to which he might be entitled at the time of his death that the provisions of the will upon which the remaindermen rely do no more than make it doubtful what the testator's intention was as to income

accruing after his death and before the close of adminis-
tration. Under such circumstances the general rule above
announced will be applied.

Second.  Should that portion of the federal income
tax for 1920 occasioned by the sale at a profit of se-
curities owned by the trust estate be paid out of the
ordinary income of the trust estate or should it be paid
out of the principal of said estate as was held by the
circuit judge?  There is nothing contained in the will
from which we can ascertain the intention of the testa-
tor as to which fund such a tax should be paid out of.
It is admitted by all parties at interest that ordinary
current taxes are as a general rule payable out of the
income of a trust estate.  The question then is whether
this is an ordinary current tax.  If it is obviously it
must be paid out of the income.  But in our opinion it
is not an ordinary current tax.  The argument of counsel
for the guardian *ad litem* of the remaindermen that this
is an ordinary tax because it is a tax which will run
from year to year so long as the government has need of
money the same as any other property or income tax is
sound only when applied to the general nature of an in-
come tax.  The profit upon which this tax is levied is
decidedly not ordinary income in the sense that dividends
and interest are.  It is true that under the federal in-
come tax statute such a profit is held to be income and
therefore taxable under that statute as such (*Merchants'
Loan & Trust Co.* v. *Smietanka,* Vol. 41 West. Pub. Co.'s
Supreme Court Reporter, 386), but it is not such income
as is likely to recur from year to year as is ordinary in-
come from dividends, interest, etc.  A tax levied upon
such a profit as income is therefore not an ordinary cur-
rent tax.

There is another reason why in our opinion this par-
ticular tax should not be paid out of income.  The total

taxable income of this estate for the year 1920, including the profit realized from the sale of securities, was $438,-251.47. If the corpus of the estate is entitled to be enriched to the extent of the whole profit realized from the sale of securities the estate is left with an income of only $223,880.70 out of which must be paid an income tax of $219,796.98, leaving only $4083.72 out of a year's income from this vast estate to be distributed to those for whom the testator has shown the most solicitude while the estate which ultimately goes to those more remote from the testator would be enriched by $214,370.77. Such a result would be inequitable and should be avoided if possible. The apportionment made by the circuit judge is equitable. It leaves the corpus of the estate richer by $67,320.21 than it was before the sale and at the same time allows the life tenants a reasonable income for the year in which the sale was made considering the value of the estate involved.

The decree of the circuit judge should be affirmed and it is so ordered.

*Frear, Prosser, Anderson & Marx* for petitioners.

*Peters & Smith* for the guardian ad litem of the minor respondents-plaintiffs in error.

*Smith, Warren & Stanley* for the widow.

*Mott-Smith & Lindsay* for the nephews and nieces of deceased.

*Watson, Clemons & Hite* for the children of deceased.