HAWAIIAN TRUST COMPANY, LIMITED, AS TRUSTEE UNDER THE WILL AND OF THE TRUST ESTATE OF JOEL C. COHEN, DECEASED, *v.* ETHEL RUTH COHEN, JOEL C. COHEN, FRANCIS COHEN, CORA H. COHEN, MILDRED C. SPUBORG, SIGMUND H. COHEN, LEON ALEXANDER SCHWAGER, A. E. COHEN, MAYBELLE COHEN AND EDWARD SCOTT COHEN.

No. 2445.

SUBMITTED DECEMBER 2, 1940.        DECIDED MARCH 5, 1941.

COKE, C. J., PETERS AND KEMP, JJ.

796

OPINION OF THE COURT BY KEMP, J.

This appeal presents two problems for our determination. First, we must construe the will of Joel C. Cohen, deceased, to determine when the enjoyment of income by the life tenant was to commence, and second, if we determine that the right to the enjoyment of income by the life tenant was to commence at any time prior to distribution, we must then determine what effect the use of such income for capital purposes had on the rights and liabilities of the life tenant and remaindermen.

Joel C. Cohen died testate on August 11, 1931. By his will, which was duly admitted to probate in the circuit court of the first judicial circuit of the Territory of Hawaii on September 21, 1931, he provided:

"FIRST: I direct that all my just debts and funeral and administration expenses be paid, and direct my Executor to pay out of the general funds of my estate all estate, inheritance, succession and transfer taxes on all devises and bequests given hereby.

"SECOND: I give and bequeath any automobile owned by me at the time of my death and all articles of

domestic and household use or ornament which are in our home at the time of my death, and all my jewelry, clothing and other articles of personal use or ornament to my wife, ETHEL RUTH COHEN.

"THIRD: I give and bequeath all the net proceeds of my life insurance policies to which my estate shall be entitled, to my wife, Ethel Ruth Cohen.

"FOURTH: I give, devise and bequeath all of the rest, residue and remainder of my estate, both real and personal, wherever situated and of whatever nature, unto the HAWAIIAN TRUST COMPANY, LIMITED, A Hawaiian corporation having its principal office in Honolulu, Territory of Hawaii, to have and to hold the same to it and its successors in trust upon the following trusts:

"(a) To pay all of the net income derived from said trust estate to my wife, Ethel Ruth Cohen, during her life, having full confidence that she will carry out certain wishes which I have expressed to her. * * * [Here follows disposition of the remainder.]

"FIFTH: The foregoing provisions for my wife are in lieu of her right of dower in my estate.

"SIXTH: I nominate and appoint said HAWAIIAN TRUST COMPANY, LIMITED, Executor of this will and direct that no bond shall be required from it as said Executor or as Trustee hereunder."

The omitted provisions of the fourth paragraph relate to the disposition of income and corpus of the trust estate after the death of the testator's wife, Ethel Ruth Cohen, and are not material to the issue presented by this appeal. The executor named in the will accepted the appointment and entered upon the duties of that office. The widow elected to take under the will.

The property listed in the inventory filed by the executor February 15, 1932, was duly appraised. The inventory disclosed an estate situated in Hawaii consist-

ing of personal property appraised at $63,625.80, real estate in Hawaii consisting of Edgewater Beach Apartments hereinafter referred to, appraised at $150,000, and a lot at Kawailoa appraised at $1000. Said inventory also disclosed that there was additional estate in California, in the hands of the administratrix with the will annexed, consisting of personal property appraised (by the Hawaii appraisers) at $8353.56, and real estate appraised at $4800. The total appraised value of the estate in Hawaii was $214,625.80 and in California $13,153.56, or a grand total of $227,779.36. All of the California estate, including that specifically devised to his wife, except fifty shares of stock of Paradise Paper Box Company, was sold by the administratrix and used to pay expenses of administration, including a $2000 family allowance, and claims against the estate. Said fifty shares of stock were delivered to the executor, sold for $124.80, and accounted for by it. Portions of the estate in both Hawaii and California were mortgaged or pledged. The property comprising Edgewater Beach Apartments was mortgaged to secure a loan of $140,000, on which there was due and unpaid on account of principal the sum of $125,000. A claim was duly filed by the mortgagee with the executor for the $125,000. Unsecured claims were filed with the executor within the time allowed by law. The proceeds from the sale of personal property were not sufficient to pay the sums for which said personal property was pledged and the expenses of administration. The executor, as authorized by R. L. H. 1935, § 4780, took possession of the mortgaged real estate, collected the rents, paid the taxes, interest on the mortgage debt, upkeep and operating expenses. The depressed condition of the real estate market during the normal period of administration made a sale of the real estate for a sum commensurate with its supposed value impossible, and it was the con-

sensus of all interested parties that administration should be prolonged until the market improved or other means were devised for avoiding a sacrifice of the estate. Accordingly, upon the petition of the executor and without objection by the interested parties, the court from time to time authorized the executor to delay accounting and distribution of the estate and continue the management of the mortgaged real estate.

In June, 1938, the executor had accumulated sufficient income, if authorized to use it, to meet the terms upon which the mortgagee was willing to withdraw its claim and consent to a distribution of the real estate to the trustee, subject to the mortgage, and pay all other claims. It thereupon filed a petition in the probate proceedings for authorization to enter into the agreement with the mortgagee, compromise and pay certain creditors' claims and pay all other claims of creditors from income, for approval of its accounts, determination of trust and distribution of the estate. Accompanying said petition were accounts of the executor's transactions up to December 31, 1937. Said accounts, and the executor's final account, have by stipulation been made a part of the record on this appeal and show that at the date of distribution there was a balance of $2198.82 due the executor for moneys advanced in connection with the probate and administration of decedent's estate, after exhausting the receipts from the sale of corpus. A sum sufficient to cover this overdraft was transferred from income to corpus. Said accounts also show that there was on hand a balance of approximately $30,000 of income from rents of the mortgaged real estate. The inventory of property remaining in the hands of the executor shows that there remained only the beach apartments and the furniture used in connection therewith. Said furniture was appraised at $6660. All appraised values were as of August 11, 1931, the date

of the testator's death. More specifically, the probate court was asked to authorize payment of decedent's debts out of accumulated income and to approve an agreement with the holder of the $125,000 mortgage whereby the mortgagee agreed to withdraw its claim filed with the executor, extend its mortgage to April 22, 1940, and consent to the distribution of the real estate covered by its mortgage to the trustee, subject to its mortgage, provided said mortgage was reduced by the payment of $6500 on account of the principal thereof and its debt further secured by a chattel mortgage on the furniture used in connection with the operation of Edgewater Beach Apartments. The agreement with the mortgagee was to provide for the payment of interest quarterly at the rate of five per cent per annum and for the payment of $1500 quarterly on account of principal, in addition to taxes and other expenses of operation. The mortgagee further agreed to a distribution by the trustee of $1200 on April 22, 1940, to the life tenant out of net income, provided the trustee was not then in default under its agreement with the mortgagee, and said sum was available.

The trustee named in the will also filed a petition in equity in June, 1938, seeking to have determined the rights of the life tenant and remaindermen under the will after distribution of the residue of the estate to it. This petition and the petition in probate were consolidated for the purpose of hearing and on May 31, 1939, all parties agreeing, an order was entered granting the prayer of the executor in the probate proceeding. The order approved the compromise of two of the unsecured claims and authorized execution of the chattel mortgage and the agreement with the holder of the $125,000 mortgage. It also authorized the executor to pay master's and attorney's fees aggregating $5600, and to pay $6500 on the principal of said mortgage, and all other creditors in full out of

accumulated income in its hands, and distribute the residue of the estate, including any unexpended accumulated income, to the trustee. The expense of this arrangement involved an appraiser's fee of $600, which was paid out of accumulated income. The probate decree did not mention this item of expense and the final account of the executor shows that the mortgage debt was reduced $8000 by the executor from accumulated income instead of $6500, as authorized by the decree. The matter of the determination of the effect of the said payments out of income on the rights and liabilities of persons interested in said estate was expressly left for future consideration in the companion equity proceeding.

There was no appeal from the probate order, which is now final, and settled all issues except those reserved for determination in the equity proceeding.

Without further hearing a decision was rendered in the equity proceeding on July 19, 1939, and later modified on rehearing in January, 1940. A decree in accordance with the decision as modified was entered on February 15, 1940. It is from this decree that this appeal is prosecuted.

In the equity proceeding the life tenant, Ethel Ruth Cohen, contended that she was entitled to all net income accruing after the death of testator and therefore entitled to be reimbursed all income which accrued after the death of the testator which the executor disposed of pursuant to the order of the probate court. She also claimed and was given the right to be reimbursed all income accruing after distribution used by the trustee in the reduction of the principal of the mortgage pursuant to the terms of said agreement.

The life tenant contended below and contends here that the will does not fix the time when the life use was to commence, and relies upon the general rule announced in *Wilcox* v. *Wilcox*, 26 Haw. 219, 229, in support of her

claim. The chancellor did not refer to the *Wilcox* case in his written decision of July 19, 1939, but on rehearing he differentiated the will in this case from the will in the *Wilcox* case and held that "Under the testator's will the life tenants right to 'net income' does not arise until the trust estate has been set up and earns net income," citing *Campbell Est.* v. *Campbell-Parker*, 18 Haw. 34. He also held that "The personalty being insufficient to pay debts, the income from realty accumulated in an effort to salvage something for a trust estate is available to pay debts," citing *In re Shepherd's Estate*, 49 Pac. (2d) 448; *In re Bergman's Estate*, 233 N. W. 807; *In re De Bernal's Estate*, 131 Pac. 375; *Smith* v. *Kibbe*, 178 Pac. 427; and R. L. H. 1935, §§ 4789, 4780.

The chancellor, further answering the claim of the life tenant, said: "It is argued that the remaindermen may thus profit from the use of prior income coming into the hands of the executor as rentals. In the same way it may be answered that the life beneficiary, under the facts, would receive no income in any event if the heavily mortgaged chief asset had not been conserved in the method shown by the facts. There would have been neither dower nor future income, if the property mortgagee had insisted on foreclosure and sale, nor would the widow's general claim against the probate estate have been paid. The management of the apartments was an absolutely necessary pre-condition to raise money, short of sale, to terminate probate with a solvent estate." The reference to dower is not apropos, the widow having elected to take under the will in lieu of dower.

The decree of February 15, 1940, recites: "That at the time of the entry of the said order of distribution in said Probate Proceedings No. 8526 on May 31, 1939 the moneys derived from rents or otherwise, and the properties, consisting of the Edgewater Beach Apartments,

then in the hands of the Executor constituted the residue of the estate in the hands of the Executor, and from and after the entry of the said order on May 31, 1939 the said moneys and properties constituted the corpus of the trust estate and should be treated as such by the Trustee for the purpose of determining the respective rights of life beneficiaries and remaindermen under the said trust. That the income to which Ethel Ruth Cohen, the life beneficiary of the estate, may be entitled is that net income derived from such corpus of the trust estate from and after the time of the entry of said order of distribution in said Probate Proceedings No. 8526 on May 31, 1939, and that the life beneficiary is not entitled to be equitably reimbursed for the use, for payment of debts of the decedent and for reduction of the principal indebtedness secured by the mortgage referred to in the said compromise agreement, of net income derived from the moneys and properties of the probate estate prior to the time of the entry of said order on May 31, 1939. That respondent Ethel Ruth Cohen, the life beneficiary of the trust estate, is entitled to interest at the rate of 3 per cent per annum, not compounded, on all sums received as reimbursement pursuant to the provisions of Paragraph 4 hereof, said interest to be computed from the date or dates of payment pursuant to the said compromise agreement to the date of reimbursement."

The trustee was accordingly directed by paragraph 4 of the decretal order to "reimburse respondent Ethel Ruth Cohen out of corpus, if and when the same is available for disbursement, to the extent that any net income accruing in the hands of the trustee since the time of entry of the said order of May 31, 1939 is used by the trustee to meet the terms of the said compromise agreement in reducing the principal amount of the said mortgage and to the extent that the said net income so used is net income

to which the respondent Ethel Ruth Cohen would otherwise have been entitled under the terms of the will of Joel C. Cohen, deceased." The trustee was further directed to pay to the life tenant interest at the rate of three per cent per annum out of corpus on all reimbursements made, if any, computed from the dates of payment pursuant to the compromise agreement to the date of reimbursement.

After making the payments authorized by the probate order there was left in the hands of the executor income amounting to $4988.42, which was distributed to the trustee. This appeal is to determine the rights and liabilities of the life tenant and the remaindermen growing out of the use and distribution of said income, as ordered by the probate court. Such rights and liabilities as arose came into existence when the payments and distribution were made. (*Tindall* v. *Peterson*, 99 N. W. 659, 660 [Neb.].) The payments were made, as appears from the executor's final account, within the month following the order of the probate court of May 31, 1939, and should be considered as having been made on that date.

The life tenant, appellant, does not complain of that part of the decree which defines the rights and liabilities of the parties to grow out of the application of income accruing after distribution and the remaindermen have not appealed therefrom. The appellant's sole specification of error is to the effect that it was error to fail to include in the decree a direction to the trustee to reimburse her out of corpus, if and when funds are available, the amount of the accumulated income disposed of by the probate order. We are not, therefore, concerned with the question of the correctness of that portion of the decree directing use and reimbursement of income to accrue after distribution.

It is well-established in this jurisdiction that when a testator gives the residue of his estate to a trustee to pay

the income thereof to a named person for life, and no time is prescribed in the will for the commencement of the enjoyment of the income of such residue, such person is entitled to the income of the *clear residue*, as afterwards ascertained, to be computed from the death of the testator. (*Wilcox* v. *Wilcox, supra*, and cases cited; *Campbell Est.* v. *Campbell-Parker*, 18 Haw. 342, 347, 348.) Although there are decisions to the contrary, the foregoing rule is supported by the great weight of authority. (*Estey* v. *Commerce Trust Co.*, 333 Mo. 977, 64 S. W. [2d] 608; note 70 A. L. R. 636, and cases cited; 1 Restatement, Trusts § 234.) The reason for this rule is frequently declared to be that the life tenant ranks first in the consideration of the testator. (*Will of Leitsch*, 185 Wis. 257, 201 N. W. 284, 37 A. L. R. 547.)

No time is expressly prescribed in the will of Mr. Cohen for the commencement of the enjoyment of the income by the life tenant nor do we find anything in said will to indicate by necessary implication what the testator intended in that regard. The general rule therefore applies.

A complication arises in this case, however, which did not exist in the *Wilcox* case, by reason of the residue as afterwards ascertained being increased by the use of income to pay debts and expenses of administration, and the unused portion thereof being distributed to the trustee, who was thereafter instructed by the decree appealed from to treat said income as corpus. The following, we believe, will demonstrate the equities involved.

If the life tenant, immediately upon the death of the testator, had supplied the executor with sufficient money to pay the unpaid part of the expenses of administration and all debts, including the mortgage debt, except those discharged with the proceeds of the sale of corpus, thus clearing from all encumbrances the unsold portion of the

estate which was distributed to the trustee, she would then have been entitled to all of the net income produced by the unsold portion of the estate. This would have enriched the residuary estate to the amount of her contribution and would have been to the financial benefit of both the life tenant and the remaindermen. Or, if, instead of furnishing the executor with sufficient money to pay all the debts and expenses, she had procured from the mortgagee the agreement which was ultimately procured and had furnished the executor with sufficient funds to make up the deficiency in the proceeds from the sale of corpus for the payment of the other debts and expenses of administration, she would have been entitled to all the net income from the remaining estate, except sufficient to pay the interest on the remaining mortgage debt, and would have enriched the residue of the estate ultimately to be distributed to the remaindermen to the amount of her contribution. Had either of the foregoing procedures been followed, the payments made by the life tenant would have been beneficial to both herself and the remaindermen and the problem would have been to determine the extent of the benefit to each of them. But, the life tenant having failed to furnish the needed funds, the court, without objection from the life tenant, authorized the executor to execute the agreement with the mortgagee, make the payments called for therein, pay the debts and expenses of administration out of accumulated income and distribute the balance. We have seen that prior to distribution approximately $30,000 of net income was accumulated. Obviously, if the life tenant had come forward with the amount needed when the executor asked the court to authorize it to use the accumulated income to pay the debts, expenses of administration and reduce the mortgage debt, she would have been entitled to have distributed to her all of the accumulated income. It cannot, therefore,

be said that because the income was applied by the executor directly to the purposes aforesaid, the rights and liabilities of the life tenant and the remaindermen have been altered.

In considering the question of the obligation of the remaindermen to reimburse the life tenant, it must be borne in mind that the benefit to the remaindermen is not immediate, for they are denied the enjoyment of the estate so long as the life tenant lives. The duration of the life of a given person being uncertain, "Expectancy of life is a question of fact, and while life tables are very convenient aids, and perhaps afford the most satisfactory basis of an estimate, they are not conclusive, being considered in the light of, and subject to variation by proof concerning, the age, health, and habits of the parties." *Damm* v. *Damm*, 109 Mich. 619, 622, 63 Am. St. Rep. 601, and note at 604. (See also *Peck* v. *Glass*, 6 How. 195 [Miss.].) The method of solving such a problem is set forth by Pomeroy in his Equity Jurisprudence as follows:

"§ 1223. 2. Where Their Equities are Unequal— Tenants for Life or for Years. * * * In the case now to be considered, the titles are also simultaneous, and the inequality consists in the fact that the estate held in the mortgaged premises by one party is only partial, while that held by the other is absolute or in fee. The particular inequality referred to exists when the land subject to the mortgage is held by A as a tenant for life or for years, and by B as a remainderman or reversioner in fee. The general doctrine of contribution applies to such owners, but is modified in its operation by the new element of inequality in the nature of their respective estates. As has already been shown, the holder of a partial interest is always compelled to redeem the whole mortgage. By a settled rule of the law, the life tenant, A, is bound to pay the annual interest on the mortgage accruing during his

own lifetime,—or if a tenant for years, during his term. This is his own debt, and for what he thus pays in keeping down the interest he is not entitled to any contribution from B, the owner in fee. When, therefore, A redeems the mortgage, a certain part of the money paid to the mortgagee would ;be the equivalent of the annual interest on the mortgage which A was obliged to pay at all events, and this part, being his own debt, need not be refunded to him by B; but all of the mortgage debt over and above such part equitably belongs to B to pay; it is the share which should fall upon him by virtue of his reversionary interest. The problem then is to ascertain what portion of the total mortgage debt represents the annual interest on the mortgage which A is bound to pay during his life; subtracting that amount from the total sum, the balance is the share which B must contribute, and for which A may hold the mortgage as a lien on the land. An element of uncertainty—the duration of A's life—is inherent in the problem; but the courts, both of England and of this country, have adopted the standard 'life tables' as the basis of calculation in all such cases. The rule is settled, that the present worth of an annuity equal to the annual interest running during the number of years which constitute his expected life represents the sum which A is liable to pay as *his* individual indebtedness; the balance, after subtracting this sum from the mortgage debt actually paid to the mortgagee, is the amount which B is liable to contribute. When the life tenant, A, is a dowress, the present worth is calculated upon the basis of one third of the annual interest accruing on the mortgage of the entire premises. If the remainderman or reversioner, B, redeems, the rule is the exact converse of the one above stated." 3 Pom. Eq. Jur. (4th ed.) § 1223, p. 2928 *et seq.* The rule as stated in 17 R. C. L. § 29, pp. 639, 640, is in accord with the foregoing.

In *Tindall* v. *Peterson, supra,* p. 660, the rule is stated as follows: "There seems to be no question that the duty of a life tenant to preserve the premises from waste includes the obligation to keep down the interest upon existing incumbrances. In case he pays the principal, the rule generally adopted is that the burden is apportioned between him and the reversioner or remainderman in such manner as that the tenant will 'pay such sum as would equal the present value of the amount of interest he would have paid during his life if the mortgage had continued so long in existence.' Tiedeman on Real Property, § 66. Or, as is said in Moore v. Simonson, 27 Or. 117, 39 Pac. 1105: 'The life tenant must pay the present worth of an annuity, equal to the annual interest running during the number of years which constitute the expectancy for life. The balance, after subtracting the sum thus ascertained from the incumbrance, should be borne by those in remainder.' Washburn on Real Property, vol. 1, p. 96; 1 Story, Eq. Jur. § 487; 3 Pomeroy, Eq. Jur. § 1223." (See also *Livesay* v. *Boyd,* 180 S. E. 158 [Va.].)

The life tenant having consented to the probate order, there is no contention that said order was improper but it is earnestly contended by the life tenant that the effect of said order having been reserved for decision in equity, the chancellor erred in denying her the right to be reimbursed all income disposed of by said order. All of the net income accumulated by the executor, except $4988.42, was paid out by the executor. The $4988.42 remaining was distributed to the trustee. The debts outstanding at the death of the testator and the expenses of administration were legal encumbrances for which the estate was liable. (*Estate of Beckley,* 31 Haw. 163.) In this respect they were not different from the mortgage debt. (*Hunt* v. *Watkins,* 20 Tenn. 498; *Peck* v. *Glass, supra;* note 29 L. R. A. [N.S.] 153.) The trustee is,

by the decree appealed from, directed to treat the income distributed as corpus of the trust estate. Said decree also denies the right of the life tenant to be reimbursed any part of the accumulated income distributed to the trustee or used to pay claims, expenses of administration and to reduce the mortgage debt. This is clearly not in accord with the authorities cited. Neither is the life tenant's contention that she is entitled to be reimbursed *all* income so used in accord with said authorities, which we believe correctly state the principles to be applied to the facts of this case.

The proportionate amounts which the life tenant and the remaindermen, respectively, were obligated to contribute to the reduction of the mortgage debt, the payment of the other debts of the testator and the expenses of administration can be ascertained by calculating the present worth (as of the date of payment) of an annuity for the expected life of the life tenant equal to the annual interest on the amount of income used for corpus purposes. The present worth of such annuity is the amount which the life tenant should bear and that sum subtracted from the amount of income so used will give the amount which the remaindermen must contribute. This procedure will involve facts not disclosed by the record; as, for instance, the age and life expectancy of the life tenant at the time when the present worth of the annuity is to be ascertained. We think also that the chancellor should determine, after a hearing, what per cent should be applied in calculating the present worth of the annuity. Unlike some of the States, we have no statute prescribing the per cent to be used, except for inheritance tax purposes as prescribed in R. L. H. 1935, § 2074, where it is fixed at five per cent per annum.

What we have said as to the amount of the income accumulated is not to be construed as a determination by

us of the amount used to discharge capital obligations. From an examination of the executor's final account, it appears that some of the accumulated income was used to pay interest on some of the unsecured claims. We have not attempted to ascertain what amount was so used. Interest on the debts was properly payable out of income. The life tenant is not, therefore, entitled to be reimbursed any of the income so used.

The decree appealed from should be modified in accordance with the views herein expressed. The cause is, therefore, remanded for further proceedings not inconsistent with said views.

*C. S. Davis* and *R. J. O'Brien* for appellant.

*Thompson & Russell* for appellees Joel C. Cohen, A. E. Cohen and Maybelle Cohen.

No appearance of or for other appellees.