WILLIAM I. VANATTA *et al.*

*v.*

SARAH CARR *et al.*

*Opinion filed October 23, 1907.*

1. TRUSTS—*rule where tenant for life invests fund in real estate.* Where a tenant for life in a fund composed of the testator's personal property invests such fund in real estate and takes title in her own name, the remainder-men have a right to have the title decreed to be in her for life with remainder to them.

2. SAME—*effect where life tenant mingles trust fund with other money.* Where the purchase price of land bought by a widow with a fund in which she had a life estate exceeds the amount of the fund, the widow, in a proceeding by the remainder-men to establish their rights, is not entitled to have such excess awarded to her unless she is able to show, clearly and satisfactorily, that it came from her own funds.

APPEAL from the Circuit Court of Jasper county; the Hon. TRUMAN E. AMES, Judge, presiding.

This case has been to this court before as *Vanatta* v. *Carr*, 223 Ill. 160. In the original case the trial court sustained a demurrer to the bill now before us and dismissed the suit for want of equity. On appeal to this court the decree of the lower court was reversed and the cause remanded. A copy of the will construed by the court in that case and all the facts as set out in the bill are found in the statement in the original case and need not be here repeated. The remanding order in that case was filed in the circuit court of Jasper county, and the cause came on again for hearing at the April term of that court, at which the defendants all answered the original bill, denying most of the material allegations, and appellee Sarah Carr filed her cross-bill asking for special relief, which cross-bill was answered by the complainants in the original bill, who also replied to the answers to the original bill.

The testator, William T. Cowger, died seized of 12¾ acres of ground which is not here in question. As shown by the final report of the administrator in the county court, his personal estate consisted of chattel property appraised at $330.75; cash on hand, $500; good notes belonging to the estate, $2220; total, $3050.75. This was disposed of as follows: Executor, for services, $80.25; Sarah A. Cowger, bequest, $2220; Sarah A. Cowger, claim probated, $73; Sarah A. Cowger, personal property taken on account of the award, $330.75; Sarah A. Cowger, balance due on award, $318.75. This makes $3022.75, and the balance, about $28, was for court costs, attorneys' fees, etc.

After the settlement of the estate and the payment of the money shown above by the executor, the appellee Sarah Carr, who is shown in the executor's report as Sarah A. Cowger, bought the 36.98 acres of land now in question for $2375, taking the title in her own name. She claims in her answer and cross-bill that she used the $2220 turned over to her by the executor in paying for the land, but that $300 of this was her own individual money that she had received from her father's estate; that she had also provided her son Alva B. Cowger with a team of horses and bed and bedding, as directed in the will, at a cost of $350, and with food and raiment at a cost of $700, so that of the $2220 turned over to her by the executor only $870 then belonged to the estate; that the difference between the $2220 and $2375, or $155, she paid from her own money.

Appellants, in their answer to the cross-bill, allege that in addition to the $2220 of the purchase money for said property that went into the estate, all of which they allege belongs to the estate, the executor gave $80.25 allowed him for services, as shown in his final report, to appellee Sarah Carr to be used as a part of the estate, and that she used this money along with the $2220 to pay for this land. They deny that any part of the $2220 was the personal property of the appellee Sarah Carr from any moneys that she re-

ceived from her father's estate; also allege that she is barred by her own *laches* from setting up any claims to the fund or any portion thereof; deny that she had given to her son Alva B. Cowger his board and clothing, bed and bedding and team of horses, as alleged in the cross-bill.

After the issues were settled the case was heard by the chancellor and a decree entered therein, the material parts of which, as affecting the questions here at issue, are substantially as follows: Finds that appellee Sarah Cowger (now Sarah Carr) had turned over to her by the executor $2220 cash and notes, all of which notes were subsequently paid to her in full and all of which amount was paid by the executor to her as devisee for life and not otherwise; that said Sarah Carr, as directed and provided for in said will, has furnished and delivered to said Alva B. Cowger an average team of horses, bed and bedding, and has provided food and raiment for him, at an aggregate sum of $1007.50; that said appellee, since the death of testator, has purchased the 36.98 acres of land in question, taking the estate in her own name, where it still remains, for which she paid the sum of $2375, a portion of which sum was her own money and the remainder she received as devisee, as aforesaid, under the will of said testator; that said appellee, in furnishing and providing the said Alva B. Cowger with bed and bedding and a team of horses and food and clothing and purchasing said real estate, paid out the sum of $1162.50, which sum was composed of her own notes and income of the life estate devised to her by said will; that the remainder-men, under said will, are entitled to be protected and have secured to them the sum of $2220 after the termination of the life estate of the said Sarah Carr therein, subject to any decree which may hereafter be made by a court of competent jurisdiction for the purpose of providing for the support of the said Sarah Carr; orders that said Sarah Carr be required to give bond in the penal sum of $2500, with sureties approved by the court, conditioned for the faithful manage-

ment of said $2220; that said Sarah Carr shall control and manage said 36.98 acres of land, and shall be authorized, in her discretion, to sell and convey the same and to use and control the proceeds arising from such sale and to loan or re-invest the same in other real estate, at her pleasure, free from molestation or interference of the devisees or remainder-men under said will; that the costs of the proceedings shall be divided equally between appellees and appellants. From this decree the appellants have appealed to this court. Cross-errors have been assigned by appellees.

ANDREWS & VAUSE, for appellants.

ALBERT E. ISLEY, and GIBSON & WALKER, for appellees.

Mr. JUSTICE CARTER delivered the opinion of the court:

It is somewhat difficult to ascertain definitely from the record the sum expended by appellee Sarah Carr under the provisions of the will for her son Alva B. Cowger, which the chancellor placed at $1007.50; but that is not important in view of our conclusions reached in this case. We assume from the findings of the decree and the briefs of counsel that the trial court did not take this amount into consideration in deciding what should be allowed to the remainder-men under the will. Manifestly, the chancellor found that appellee Sarah Carr should be compelled to account for the $2220 that she had taken from the estate and invested in the land in question, the balance of the purchase price of $2375, or $155, being made up from her own funds, and that while she had paid the $1007.50 to Alva B. Cowger out of her own money, under the circumstances as shown on this record she could not recover it. Appellees, under their assignment of cross-errors, insist that the court should have allowed this amount of $1007.50 to be deducted from the amount due the remainder-men, for which the said appellee Sarah Carr was required to give bond.

It is apparent that the widow never intended to charge the estate with this amount until after the trouble arose over the construction of the will. Soon after the testator's death, in the spring of 1899, the land in question was purchased, and appellee Sarah Carr (then Sarah Cowger) and her son Alva (who was then past fourteen years of age) moved onto it. Only a small amount of farming was done that fall, but for several years thereafter Alva ran the farm, paying his mother two-thirds of the proceeds as rental. One year he ran it with Lee Vanatta. Shortly after he became nineteen Alva married and then continued to run the farm for two or three years more, when he had a sale and removed to town and bought a store. About the time of her son's marriage Sarah Cowger also married, and sold her son Alva the farm implements for $40, and gave him a team of horses and his bed and bedding. In September, 1905, Sarah A. Carr and her husband conveyed the 36.98 acres to Alva B. Cowger, and these proceedings resulted. The mother did not claim any contract with her son Alva, or anyone else, for compensation for his support during all those years, nor any claim for the horses or bed and bedding. Indeed, she testified herself that all she had and all her former husband (the testator, Cowger,) had she called one, and expected, after doing these things for Alva, to have it all divided equally under the will until this lawsuit was commenced, and then she proposed to have all she was entitled to.

In construing a will, as has been frequently said by this court, the intention of the testator should be ascertained and given effect if not prohibited by law. This is the primary rule in construing wills. (*Bradsby* v. *Wallace,* 202 Ill. 239; *Vanatta* v. *Carr, supra.*) No definite amount was fixed in the will to be given to appellee Alva Cowger. It certainly was not the intention of the testator that he should be paid enough to give him food and raiment and keep him in idleness. The will shows that the testator expected to have a

substantial amount left his other children. He certainly could not have planned that his son Alva should have over $1000 from the body of his estate, his wife a life estate and appellee Lee his portion, and expect to have left an amount of a substantial size for the other children. It will be noted in this connection that Alva was also one of the three equal residuary legatees. The testimony in the record shows that at the time of his death the testator was planning to buy the very land in dispute. His wife purchased the property as soon as she could, and largely because he had so planned. She and her son Alva were supported by it. In *Vanatta* v. *Carr, supra,* we said, in discussing this question, (p. 167,) that the meaning of the provision of the will with reference to Alva and the mother's life estate was, "that except as to the charge made against his estate in favor of his son Alva, his widow should have a life estate in his property." The life estate was subject to the legacy of Alva. The amount that was to be paid him under this legacy must necessarily be left largely to the discretion of the person who was to pay it. (1 Jarman on Wills,—6th ed.—p. 398.) The mother took it upon herself to act in this capacity. She says she kept no account as to the amount she paid out, and she only estimates what the value is. Having seen fit to pay this amount herself, she cannot now ask to have it charged to the estate. (*White* v. *Cannon,* 125 Ill. 412; see, also, *Tyler* v. *Daniel,* 65 Ill. 316; *Ward* v. *Armstrong,* 84 id. 151.) We think the court ruled correctly in not charging this amount to the share of the remainder-men. Appellee Sarah Carr is barred by her own *laches* from making any such claim. This conclusion as to the intention of the testator and the justice of such finding is strengthened by the fact that Sarah Carr received her widow's award, which, under the statute, is given partly for the purpose of assisting in the support of minor children, if there are such. The only minor child was Alva Cowger. He and his mother received support from this farm, which was purchased from

money coming from testator's estate. This result, plainly, is all that testator intended as to Alva's support.

It might well be urged that while Alva B. Cowger lived with his mother on the farm and worked for her, and while she was entitled to his wages, she should support him. His marriage emancipated him, even though he was not of age, and entitled him thereafter to his own earnings. (21 Am. & Eng. Ency. of Law,—2d ed.—p. 1060, and cases cited.)

What is said on this point on the question of *laches* covers fully any contention made by appellees as to the right of the widow to claim $300 which she testifies she received from her father's estate. It is very clear from this record that this $300 had been mingled with the funds of the testator for years previous to his death, no account being kept of it, and was returned to the county court as a part of his estate, and she herself testifies that she never expected to make any claim for it until this trouble arose. The chancellor was right in not allowing this claim.

One hundred and fifty-five dollars of the purchase money was found by the court to have been paid out of money belonging to appellee Sarah Carr. Appellants contend that $80.25 of this amount was turned over to her by the executor, her son-in-law, Vanatta, to be a part of the general fund of the estate and not to belong to her. He testified to this fact and the purpose for which it was to be used, and his testimony on this point is evidently in accordance with the facts. The appellants further contend that the balance ($75) was never intended to be charged by her against the estate, and that under the authorities when a trustee mingles her own funds with trust funds in purchasing property for the beneficiaries, the burden is upon the trustee to show clearly the amount she has used out of her own funds in order to have it credited to her. (*Tyler* v. *Daniel, supra; Ward* v. *Armstrong, supra.*) It appears from the testimony of the executor and one of the other appellants that there was some cash on hand at the death of the testator,

which the widow (appellee herein) used without making it a part of the inventory. The executor testified that she used part of this money to pay funeral expenses, and that $73 of these same funeral expenses was probated and paid to her from the estate. As we understand his testimony, he claims that she had this $73 from the money that was not inventoried, and that she admitted to him that she had about $100 of the estate's money, including this $73, over and above that which she had put into the purchase of this land. Appellee Sarah Carr was not asked by any counsel as to this amount of $100 or the $73 double payment. Having put this $155 in with the other trust funds in the purchase of this land, she cannot have it allowed to her unless she shows, clearly and satisfactorily, that it came from her own individual funds. This she failed to do.

The main contention is as to the correctness of the court's ruling in allowing security, only, for the fund belonging to the remainder-men, appellants claiming that the chancellor should have entered a decree placing the title to this land in appellee Sarah Carr for life, with remainder to those entitled to it under the will.

In Perry on Trusts (vol. 2, 5th ed. secs. 545, 546,) the rule is laid down that if the trust fund is invested in land and the land rises in value, from its situation or from the use and necessary improvements made by the tenant for life, such increased value becomes capital and belongs to the remainder-men. The general rule seems to be that the enhanced value of the principal of a trust fund goes to the remainder-men; and this is true whether the investment be made in real estate or in stocks and bonds. (Chaplin on Express Trusts, secs. 417, 418; 16 Cyc. 621, and cases there cited; *In re Gerry,* 103 N. Y. 445.) In *Dee* v. *Dee,* 212 Ill. 338, in discussing a similar question we said (p. 355): "If the widow invested the proceeds of the personal property in real estate, the remainder-men not challenging her power or authority to make that investment, the title should

be placed in her for life or as long as she remains the widow of Patrick Dee, with remainder to the persons entitled to the remainder in the personalty under his will,"—citing in support of this holding *Burnett* v. *Lester,* 53 Ill. 325, *Welsch* v. *Belleville Savings Bank,* 94 id. 191, and *Buckingham* v. *Morrison,* 136 id. 437, which are cited and some of them relied on in support of the findings of the chancellor. We said in *Vanatta* v. *Carr, supra,* in discussing this point (p. 171): "If the averments of the bill are true that the land purchased by Mrs. Carr was purchased wholly with the personal property left by her husband, the title should be placed in her for life with remainder in fee in those entitled to it under the provisions of the will. We see no good reason for the appointment of a trustee to manage and control the estate or requiring Mrs. Carr to give security for the protection of the remainder-men if the facts are as averred in the bill. She would be entitled to the use, rents and profits of the land and should be given its possession and management during her life." The facts as found on this hearing are not substantially different from what they were understood to be in the previous hearing before this court, and the rule laid down by us as above should govern in the final distribution. The decree should have directed, in accordance with the former decision, that the title to the land in question be placed in Sarah Carr for life with remainder in fee to those entitled to it under the provisions of the will, and that she be entitled to the use, rents and profits of the land and be given its possession and management during her life, but that she be not required to give bond.

The decree of the circuit court will therefore be reversed and the cause remanded to that court, with directions to enter a decree in harmony with the views herein expressed.

*Reversed and remanded, with directions.*