THE NORTHERN TRUST COMPANY, Appellant, *vs.* BUCK &
RAYNER, Appellee.

*Opinion filed April 23, 1914.*

1. INHERITANCE TAX—*inheritance tax is not a tax upon prop-
erty.* That portion of the property of a deceased person which is
reserved to the State under the Inheritance Tax law, although de-
nominated an inheritance tax, is not a tax upon the property, but
is a condition or a charge upon the right or privilege of succeed-
ing to the ownership of the property by descent or will.

2. SAME—*State acquires title to its share of deceased person's
estate by operation of law.* Under the Inheritance Tax law the
State acquires title to its portion of the estate of a deceased per-
son immediately upon the death of the owner, and such portion be-
comes severed from the remainder of the estate by operation of
law and cannot pass either by descent or devise.

3. SAME—*when a lessee is not obliged to pay inheritance tax.*
In the absence of express words in a ninety-nine year lease which
directly, in terms, require the lessee to pay inheritance taxes, pro-
visions in the lease which refer to the payment by the lessee of
taxes, charges and assessments that may be imposed upon the prop-
erty itself exclude the idea that the lessee is bound to pay an in-
heritance tax, which is a thing wholly apart from property itself.

APPEAL from the Appellate Court for the First Dis-
trict;—heard in that court on appeal from the Circuit Court
of Cook county; the Hon. JOHN P. McGOORTY, Judge,
presiding.

· MASON BROS:, (HENRY B. MASON, of counsel,) for appellant.

D'ANCONA & PFLAUM, for appellee:

Mr. JUSTICE VICKERS delivered the opinion of the court:

The sole question in the case at bar is whether appellee, Buck & Rayner, a corporation, being the assignee of the lessee interest in a ninety-nine year lease, is liable, under the covenants in that lease, to re-pay appellant, as trustee and executor under the last will and testament of the lessor, the amount of the inheritance tax which appellant was compelled to pay to the county treasurer of Cook county. The action was in covenant for the recovery of $8010.85 which appellant paid as inheritance tax to the State by reason of the passing of the demised premises under the last will of the lessor, Ralph E. Starkweather. The suit being upon the lease and its assignment, those documents were brought into court and copies thereof attached to the declaration, and in the same manner, by an amendment to the declaration, the will of the original lessor ·was brought into court and a copy thereof attached to the declaration as an exhibit. Appellee craved and obtained oyer of the lease and the assignments thereof and the will of the lessor, and thereupon filed a general demurrer to the declaration, which was sustained. Appellant having elected to· abide by its amended declaration, final judgment was rendered against it, which upon an appeal to the Appellate Court for the First District was affirmed. The case comes to this court on a certificate of importance.

The course of the pleadings here pursued is in accordance with the authorities, (1 Chitty's Pl.—Am. ed. 1872— 13; *Collins* v. *Ayers*, 13 Ill. 358; *Matthews* v. *Storm*, 72 id. 316;) and presents the legal question whether under the terms of the lease appellee is liable to reimburse ap-

pellant for the amount of inheritance taxes paid by the executor of the lessor.

It appears from the averments of the declaration that the testator, Ralph E. Starkweather, was the owner, in his lifetime, of certain real estate located on the south-west corner of State and Adams streets, in the city of Chicago; that on May 1, 1903, the testator executed a ninety-nine year lease on said premises, at an annual rental of $15,000 for the first two years and $17,000 yearly rental for the remaining ninety-seven years. This lease by successive assignments became the property of appellee, and after the death of the lessor appellee attorned to appellant and recognized appellant as the successor to the title of the lessor. The declaration shows that after the death of the lessor an appraiser was appointed by the county judge of Cook county to appraise the property of the testator for the purpose of determining the amount of inheritance taxes to be paid. The appraiser reported that the property described in the declaration was worth $425,000, and that after allowing for all legal deductions the amount of inheritance taxes payable was $8010.85. The declaration avers that appellant was compelled to, and did, pay the above amount, which it now seeks in this action to recover from appellee, basing its right to such recovery upon the terms and covenants of the lease. All the facts properly alleged in the declaration are admitted by the demurrer, but appellee insists that it is not liable to reimburse appellant under any of the covenants contained in the lease. The determination of the question presented depends upon the construction to be given to certain clauses of the lease.

The second paragraph of the lease is as follows:

"*Second*—The lessees covenant to pay in the name of the lessor, as additional rent for the property above demised, promptly when due, all water rates and all taxes, assessments and municipal or governmental charges, general and special, ordinary and extraordinary, of every na-

ture and kind whatsoever, which may after April 30, A. D. 1905, during the life of this lease, become payable, (*a*) levied, imposed or assessed upon any land hereby demised or upon any improvements at any time during the life of this lease situated upon said land; or (*b*) levied, imposed or assessed upon any interest of the lessor in or under this lease; or (*c*) which the lessor shall be required to pay by reason of or on account of his interest in said land and improvements or in or under this lease, the first general annual taxes to be paid by the lessees being those levied for the year 1905 and payable in the year 1906, and the last being those levied for the year 2001. Every such tax, assessment and charge shall in any event be paid in time to prevent the addition of any interest or penalty thereto."

The sixth paragraph provides:

"*Sixth*—The lessees further covenant that they will, at all times prior to the termination of this lease and to the delivery to the lessor of possession of said land and improvements, pay and discharge and indemnify the lessor against (1) any and all liens and charges, of any and every nature and kind, which may at any time be established against said land and improvements, or any part thereof, as a consequence, direct or indirect, of any act or omission of the lessees or as a consequence, direct or indirect, of the existence of the lessees' interest under this lease; (2) any and all loss, cost, damage or expense sustained by the lessor (including the attorney's and solicitor's fees and the expenses of the lessor); (*a*) on account of or through the use of said land or improvements, or of any part thereof, by the lessees or by any other person whomsoever, for any purpose inconsistent with the provisions of this lease; (*b*) arising out of or directly or indirectly due to any failure of the lessees in any respect promptly and faithfully to satisfy their obligations under this lease; (*c*) arising out of or directly or indirectly due to any accident or other occurrence causing injury to any person or persons or prop-

263 — 15

erty whomsoever or whatsoever, resulting from the use of said land and improvements, or any part thereof, under this lease; (*d*) for which the said land and improvements, or any part thereof, or the lessor, as owner thereof or interested therein, may hereafter, without the fault of the lessor, prior to the termination of this lease and to the delivery to the lessor of said land and improvements, become liable, and especially (but not exclusively) any such loss, cost, damage or expense that may arise under any ordinance or statute or any municipal or governmental regulation."

By other paragraphs of the lease it is provided that in case of the lessees' failure to promptly satisfy the foregoing obligations the lessor may advance and pay the same and recover the amount thereof from the lessees, with interest, expenses and attorney fees. By the nineteenth paragraph of the lease all covenants, promises, agreements and requirements of the lease, except the obligation to pay rent, shall be construed as covenants running with the land, and held to apply to and be binding upon the several parties, their heirs, legal representatives and assigns. The legal and proper assignments of the lease are not controverted.

The will of the lessor, dated January 17, 1907, is filed as an exhibit with the declaration and is one of the instruments of which appellee craved and was given oyer. Those portions of the will which are regarded by the parties as having some bearing upon the question involved are as follows:

"The real estate I own on State street, in the city of Chicago, at the south-west corner of Adams street, constitutes the greater portion of my estate and will be designated by me herein as the State street property, and is at present under a long-term lease."

"If any lease in force at the time of my death of my State street property shall for any reason be terminated during the existence of this trust, then I expressly authorize said trustee to lease said State street property, or any por-

tion thereof belonging to the trust estate, from time to time and as often as occasion may arise, for such a term, not exceeding ninety-nine (99) years, as it in its discretion shall deem for the best interest of the trust estate and the beneficiary or beneficiaries," etc.

"In the event that my estate outside of my State street property shall be insufficient to pay my just debts, secured or unsecured, funeral expenses and the costs of administration, including in the costs of administration any succession, inheritance taxes or other like charges on my estate or on the interest of any devisee, legatee or beneficiary hereunder, then for the purpose of raising funds to pay the whole of the same, or one-half thereof if only half of my estate be held in trust, I hereby direct and expressly authorize said trustee to borrow money for any one or more or all of said purposes and secure the same by mortgage or trust deed on said State street property or on the interest of this trust therein and turn the money so obtained over to my executor, to be applied in payment thereof. I make this provision in order that so much as possible of the income of my said State street property may be at once available, under the terms hereof, for the benefit of the beneficiary or beneficiaries hereunder."

"If my said State street property, or the interest of this trust therein, should in any contingency which may arise during the continuance of this trust not yield a net income but become a charge or burden on the trust estate, then I direct and hereby expressly authorize said trustee, if there be no other principal of the trust estate available therefor, from time to time and as often as necessity therefor may arise, to borrow money on said State street property, or any portion thereof belonging to the trust estate, in order to pay the necessary carrying charges of the interest of this trust therein and fully to protect the interest of this trust in said State street property, and secure the same by

mortgage or trust deed on the interest of this trust in said property."

The will further provides that the entire net income from the trust estate shall be disposed of by the trustee by paying the same to or for the benefit of the testator's widow and son in certain stated proportions. Appellant was appointed executor and trustee by the will.

The liability of appellee, if any liability there be, is under the second paragraph of the lease. That paragraph requires the lessees to pay, as additional rent, "all water rates and all taxes, assessments and municipal or governmental charges, general and special, ordinary and extraordinary, of every nature and kind whatsoever, which may after April 30, A. D. 1905, during the life of this lease, become payable, (*a*) levied, imposed or assessed upon any land hereby demised or upon any improvements at any time during the life of this lease situated upon said land; or (*b*) levied, imposed or assessed upon any interest of the lessor in or under this lease; or (*c*) which the lessor shall be required to pay by reason of or on account of his interest in said land and improvements or in or under this lease."

Appellant in its brief, as well as in the oral argument of its counsel of this cause, insists that a liability is imposed upon appellee by the language of paragraph 2 found in the third clause, following the letter "*c.*" The language of paragraph 2 indicates that the instrument was very carefully prepared, and that the parties intended to impose liabilities of every kind and character, in the nature of a governmental charge or tax against this property, upon the lessees. The language of the lease is broad enough to require the lessees to pay every charge in the nature of a governmental tax which is or may be "levied, imposed or assessed upon any land" included in the lease. The words "levied, imposed or assessed" precede clauses (*a*) and (*b*) in the second paragraph of the lease, but they are not found in clause (*c*), which seems to have been inserted, not for

the purpose of introducing any new or additional liability, but to qualify and explain clauses (*a*) and (*b*). A tax or an assessment might be "levied, imposed or assessed" upon the property which for some reason might be illegal and so adjudged upon exceptions or objections filed to the same. Manifestly it was not in the contemplation of the parties that the lessees should pay, indiscriminately, every charge or tax "levied, imposed or assessed" upon the premises, but only such of these charges as the property was, in fact, liable for and which the lessor might be required to pay by reason of or on account of his interest in said land. The purpose of clause (*c*) was to differentiate between taxes and charges "levied, imposed or assessed" for which the property was, in fact, liable and those for which it was not liable, and to limit the general language of clauses (*a*) and (*b*) to such taxes, only, as were legally and properly levied or assessed against the property.

Appellant's contention is, that the language of clause (*c*) expands the meaning of the previous language of the covenants so as to include not only a governmental tax imposed upon the property itself, but also the liability to pay an inheritance tax. We are unable to concur in this construction of the language under consideration. An inheritance tax is not a tax at all upon property. It is a condition which the State imposes upon the right or privilege of succeeding to the ownership of property by descent or will. (*Kochersperger* v. *Drake,* 167 Ill. 122; *In re Estate of Graves,* 242 id. 212; *National Safe Deposit Co.* v. *Stead,* 250 id. 584.) This doctrine has been uniformly adhered to in this State and appears to be the general rule elsewhere. *Mack's Estate,* 46 Colo. 79; *Kennedy's Estate,* 157 Cal. 517; *Booth's Exrs.* v. *Commonwealth,* 130 Ky. 88; *State* v. *Hamlin,* 86 Me. 495; *Swift's Estate,* 137 N. Y. 77; *Finnen's Estate,* 196 Pa. St. 72; *Knox* v. *Emerson,* 123 Tenn. 409; *Beals* v. *State,* 139 Wis. 544; *Magoun* v. *Illinois Trust and Savings Bank,* 170 U. S. 283.

The right to take property by descent or devise is purely a statutory right. The whole subject of the disposition of property upon the death of the owner is subject to the will of the legislature. In *Kochersperger* v. *Drake, supra,* the court say: "The laws of descent and the right to devise and take under a will within the State of Illinois owe their existence to the statute law of the State. The right to inherit and the right to devise being dependent on legislative acts, there is nothing in the constitution of this State which prohibits a change of the law with reference to those subjects at the discretion of the law-making power. The laws of descent and devise being the creation of the statute law, the power which creates may regulate and may impose conditions or burdens on a right of succession to the ownership of property to which there has ceased to be an owner because of death, and the ownership of which the State then provides for by the law of descent or devise." The same doctrine has been re-affirmed in later cases. (*North* v. *Graham,* 235 Ill. 178; *Selden* v. *Illinois Trust and Savings Bank,* 239 id. 67.) The legislature having the undoubted power to regulate the subject of the devolution of property, may, by enacting a law for that purpose, provide that a certain portion of a decedent's property shall vest in the State. This, in effect, has been accomplished by what is known as our Inheritance Tax law. That act, in effect, provides that under conditions therein specified a certain per cent of the estate of a deceased person shall vest in the State. The State acquires title to its portion of the estate immediately upon the death of the owner. (*National Safe Deposit Co.* v. *Stead, supra.*) That portion of the estate which under the Inheritance Tax law vests in the State by mere operation of law becomes severed from the remainder of the estate and cannot pass either by descent or devise. While such portion of the property of a deceased person as is reserved to the State is often treated as a tax and is ordinarily denominated an inher-

itance tax, still, under all the authorities, it is not a tax upon the property but is a charge upon the right or privilege of receiving it, and when the right to receive the property is considered it is apparent that it is something distinct and separate from the property itself, and it is this right to receive property by descent or devise that the State taxes. In the light of the above authorities, if we read paragraph 2 of the lease it seems to be clear that the covenants therein imposed on the lessees referred to taxes, charges and assessments which might be imposed upon the property itself, and would exclude the idea that the lessees were bound to pay inheritance taxes, which, as we have seen, is a thing wholly apart from the property itself. Again, we think that this view is strengthened by the circumstance that there is an absence of any express words in the lease which directly, in terms, refer to inheritance taxes. When the well chosen terms in which the parties sought to express their agreement in this lease are considered, it is strange, if it had been the intention to cover the payment of inheritance taxes and to impose that burden upon appellee, that a matter of such importance should be left to a mere inference from doubtful and ambiguous language. While not of controlling importance, it is to be noted that the lessor in his will made a provision for the payment of any inheritance taxes that might be charged against his estate. In so far as any argument can be drawn from this circumstance, it indicates that the testator did not consider that he had disposed of that subject in the lease by laying the burden upon the lessees.

We are of the opinion that the appellee is not required, under the terms of the lease in question, to reimburse appellant for the inheritance taxes paid.

The judgment of the Appellate Court for the First District is affirmed.

*Judgment affirmed.*