INDUSTRIAL TRUST COMPANY *et al vs.* AGNES PARKS WINSLOW *et al.*

FEBRUARY 9, 1938.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

Moss, J. This is a suit in equity for instructions, brought in the superior court by the Industrial Trust Company, Agnes Parks Winslow and Johnson W. Parks, as executors of, and trustees under the will of George W. Parks, late of the city of Providence, deceased, as modified by the codicils thereto, against Agnes Parks Winslow and Johnson W. Parks, individually, the three minor daughters of Agnes Parks Winslow, and Maine Central Institute, a corporation. The individual respondents are all the persons, ascertained and in being, who are financially interested in the questions as to which instructions are sought; and the Maine Central Institute is the only corporation thus interested. Some of the respondents are wholly or mainly interested in the income of the trust estate and others are wholly or mainly interested in its principal.

Agnes Parks Winslow was appointed by the superior court guardian *ad litem* of the respondents who are minors; and a member of the bar of the state was appointed by that court "guardian *ad litem* to represent contingent interests of persons not otherwise represented and the interests of persons unascertained or not in being." Necessary pleadings having been filed, and necessary evidence having been introduced at a hearing in the superior court, the suit, being ready for hearing for final decree, was certified to us for determination, in accordance with general laws 1923, chapter 339, sec. 35.

The provisions of the will which concern this trust estate and which are involved in the present suit are fully set forth in our recent opinion in *Industrial Trust Co. v. Parks*, 57 R. I. 363, 190 A. 32, and will not be repeated here except so far as shall appear to be necessary or advisable. The principal questions, as to which our instructions are asked in this suit, are whether certain payments by the trustees for in-

come taxes should be charged against the income or the principal of the trust estate or apportioned between them, and if to be so apportioned, in what proportions or according to what methods. Another question, which is presented by the complainants as executors, concerns the allocation of a payment of interest made by them as a part of the settlement of an income tax deficiency claim by the United States against the estate of the decedent.

The first question which we shall consider is the problem presented by the following facts, proved by the evidence. In the federal income tax return by the trustees for the year 1935, they were obliged to include, as received by them, net capital gains to the amount of $19,445.94, resulting from sales or liquidations of securities forming a part of the principal of the trust estate, and not merely to return the *real income* received by them for the same year and taxable to them after making two deductions therefrom as hereinafter explained, which was $19,084.62.

The result was that the total tax payable by the trustees, according to their tax return, on money received by them and treated by the income tax law as income, including the net capital gains, was $4462.21, composed of "normal tax" of $729.13 and "surtax" of $3733.08. If no net capital gains had been counted in as a part of the income for income tax purposes, the trustees would not have had to pay any "normal tax" for that year, and the "surtax" would have been only $623.30. The difference between these two sums is $3838.91.

The contention in favor of those wholly or mainly interested in the income of the trust estate is that this last amount, $3838.91, should be charged by the trustees against principal and that only $623.30 should be charged against income. The contention in favor of those wholly or mainly interested in the principal of the trust estate is that all of the above sum of $4462.21, payable by the trustees, should be charged by them against income.

It is a generally recognized rule that ordinary, annually recurring taxes on productive property held in trust and also income taxes based on *real income* received by trustees from the trust property should be paid out of income, in the absence of an intent to the contrary shown in the instrument creating the trust. This general rule is not disputed in the instant case. But it does not apply to the question now under consideration, because a so-called income tax that is not based on real income received by trustees, but on capital gains, is not an ordinary or recurrent tax; and all the authorities of which we are aware, bearing on this matter, are to the effect that income taxes based on capital gains should be charged only to principal. *Wilcox* v. *Wilcox,* 26 Hawaii 219, 233 (1921); *Matter of King,* 130 N. Y. 602, 224 N. Y. S. 283 (surrogate's court of New York County, 1927); *Holcombe* v. *Ginn,* 6 N. E. (2d ed.) 351 (Mass. 1937); 1 Restatement of Law of Trusts, § 233, comment *f.*

It is argued, however, in favor of the latter of the contentions above stated, that in this will there is clearly an expression of an intent by the testator that all income taxes, whether based on income or on gains in principal, should be paid out of income. This argument is based on the fact that in specifying the powers of these trustees he said: "With full power to collect and receive the income, dividends, rents and profits from all investments and property which may become a part of said trust estate (said income, dividends, rents and profits being hereinafter included in the word 'income') and to pay from said income all taxes, assessments, ordinary and extraordinary, and other expenses and charges incident to the care, management and protection of said trust estate, including a reasonable compensation to said trustees."

It is argued that the quoted words "ordinary and extraordinary" apply to taxes as well as to assessments, but it seems clear to us that this argument is not sound, grammati-

cally or otherwise. It is also argued that the testator, being obviously a wealthy man, "must have filed many income tax returns and therefore was familiar with the general nature of income taxes and with the fact that capital gains often make up a large part of the taxable income."

But there is no evidence that he was familiar with such a fact, and it seems to us that there is little force in this argument, especially since it is fairly clear from the language of clause Twelfth of his will that it had been his long-settled policy to invest mainly in very high-grade common stocks of companies without bonded indebtedness or preferred stock and very carefully selected, and to retain such stocks unless the principal thereof should be jeopardized. He urged upon the trustees that they follow the same rule as to retaining such stocks. It therefore seems to us quite probable that he had never had to pay any income tax based on capital gains, and that in the language above quoted in his will he did not have in mind the payment of any such tax by his trustees.

In spite of similar general language in a will it has repeatedly been held by this court that, when required by equitable considerations, certain kinds of taxes or assessments should be paid out of principal and not out of income. See *Rhode Island Hospital Trust Co., Tr.* v. *Babbitt,* 22 R. I. 113, 46 A. 403; *Sheffield* v. *Cooke,* 39 R. I. 217, 98 A. 161.

In the former of these cases the will provided that the trustees of certain property should pay from income "all taxes, rates, assessments . . . and other expenses and outgoings of every nature upon or in respect of the trust estate . . . ." This court held that the trustees might properly pay assessments on unimproved real estate, for sewers, out of the proceeds of the sale of other unimproved land that was subject to the same trust, that is, out of principal; and that even as to assessments on improved land, for the layout and extension of a street, there should be an apportionment between principal and income. The reasoning was, in sub-

stance, that equity required that if the improvement, such as sewers or curbing, redounded to the benefit not only of those having present interests in the income of the trust estate, of which the property thus improved was a part, but also of those having future interests in that property, the burden of the assessment should be apportioned between these two classes according to the benefits to them respectively. In the latter of these two cases it was held that sewer and curbing assessments on unimproved real estate, unproductive and yielding no income, should be charged to principal and not to income.

Our opinion is that the testator's language above quoted does not make it the duty of the trustees to pay from income any taxes not based on income received by the trustees for the benefit of those entitled to the income of the trust estate, but based on gains which are made in the sale of principal assets and which increase only the principal of the trust estate. We are also of the opinion that, both on equitable principles and on authority, the income taxes as to which our instructions are sought in this case should, so far as based on the capital gains, be paid by the trustees out of the general principal of the trust estate.

The question still remains for decision whether the difference, $3838.91, between what the income tax actually was for 1935, with the capital gains included in the return, and what such tax would have been if no capital gains had been included, should be charged wholly against principal, or should be charged partly against principal and partly against income.

There is some force in the argument that, inasmuch as the capital gains were taxed at much higher rates in the surtax than they would have been if no real income had been included in the same tax return, the above difference of $3838.91 should not be charged wholly against principal, but should be divided on some fair basis between principal and income. But in our opinion the argument is much

stronger that the income distributable during that year to income beneficiaries should not be reduced at all on account of the fact that the principal of the estate had been increased by causes which may have increased or may have diminished the income of the estate, we cannot tell which.

The only authority of which we are aware, on this precise point, is in favor of this ruling. *Wilcox* v. *Wilcox, supra*. In that case the gross income taxable to trustees for the year in question, including capital gains of $214,370.70 by the sale of stocks of the trust estate, was $438,251.47. The total federal income tax payable by the trustees was $219,796.98, and if there had been no profit from the sale of investments, the trustees would have been compelled to pay a tax of only $72,746.40. It was held by the circuit court that the entire difference between these last two sums, namely $147,050.56, "should be charged to and paid out of the principal of said estate," and that only $72,746.42 should be paid out of the income for the same year. This decision was affirmed by the supreme court of Hawaii.

That case is closely parallel to the instant case, on the question now under consideration; and in our opinion the same rule should be applied in the instant case. We therefore instruct the trustees that of the total income tax of $4462.21 they should charge to and pay out of the income of the trust estate the sum of $623.30 only and should charge to and pay out of the principal the entire remainder of that tax, namely, $3838.91.

The second question as to which our instruction is sought arises out of the following facts. The testator devised his remainder interest in the Parks Homestead in Pittsfield, Maine, subject to the life estate therein of Obed F. Parks and Cora Chase Parks, to his nephew Johnson W. Parks. In clause Eighth of his will, the trust clause in question, immediately after the direction above quoted, he directed the trustees to make certain regular payments out of the net income of the trust estate to, or for the benefit of, certain persons

during their respective lives. One of these directions was somewhat modified by a codicil, but the modification does not affect the question now under consideration. These directions for payments, so far as operative for the year 1935, required monthly payments to six different persons, aggregating $13,200 for the year. According to the will, these payments were to be made, without deduction, from the net income of the trust estate "or from the principal if necessary." We shall hereinafter refer to them as annuities.

Then, in the same clause of the will, the testator directed the trustees, during the life of Obed F. Parks and during the life of Cora Chase Parks, to keep in good repair and condition the above-mentioned homestead and "to pay out of said income or from the principal if necessary of this trust estate" all the costs and charges of so doing and all taxes, insurance and other charges, assessed or charged against this homestead. The expenditures thus directed to be made amounted during 1935 to $1923.30.

He then directed that out of the then remaining net income of the trust estate twenty per cent should be set aside for investment for a period of ten years after his decease, or until the prior termination of the trust, and then should be added to and become a part of the capital of the trust estate. He next provided that eighty per cent of this remainder, and after the expiration of the ten-year period the entire remainder, should be paid by the trustees to certain persons for certain periods, none of which has yet expired. This final residuary share of the income is not taxable to the trustees. But the twenty per cent share to be added to the principal of the estate is taxable to them. It amounted for the year 1935 to $3876.66.

It seems to be well settled that because the above mentioned annuities are, by the will, payable out of the principal of the estate, if there is not enough income available for their payment, they are not taxable, under the income tax law, to the annuitants, even though they are actually paid out of

income. *Burnett* v. *Whitehouse*, 283 U. S. 148 (1931). It seems to follow logically that they are taxable to the trustees and we shall assume, for the purpose of this opinion, that they and also the expenditures by the trustees in connection with the homestead are thus taxable.

The trustees' income tax return for 1935 showed the amount of net income received by them during that year, exclusive of capital gains and of the sums paid to those entitled to receive the eighty per cent of the above described remainder of net income, and before the deduction of a tax paid on the Parks Homestead, to have been $19,084.62, an amount mentioned *supra*. Upon this amount, after deducting therefrom the tax on the homestead and the part of the income from liberty bonds that was not taxable, leaving $15,235, and upon the capital gains of $19,445.94 was based the total income tax of $4462.21, of which we have held only $623.30 to be chargeable to income.

The above sum of $19,084.62, received by the trustees as real income and shown in their tax return, was disposed of by them as follows: $84.66 was transferred to principal to take care of the amortization of the premiums paid for certain bonds purchased above par; $13,200 was used in paying the annuities; $1923.30 was paid for expenses connected with the homestead; and $3876.66 was transferred into the 20% reserve fund for addition to principal, provided for in the will as hereinbefore stated.

Therefore, ignoring the $84.66 as unimportant, the above income tax of $623.30 may properly be held to have been based on these three sums of $13,200, $1923.30 and $3876.66 and allocated among them proportionately. The second question which we are asked to answer is how the three parts, into which the sum of $623.30 would be divided by such allocation, are respectively to be charged, whether to income or principal or otherwise.

As to the part allocated to the expenses for the homestead, it evidently cannot be taken out of the expenses

themselves. As to the part allocated to the annuities, it might be argued that it should be deducted from them, but it is our opinion that the intent of the testator expressed in the will is that these annuities should be paid in full, without deduction for any reason, and it is not contended in behalf of any of the parties in this case that any income tax payable by the trustees by reason of such annuities should be deducted from them.

It is contended in behalf of the parties interested wholly or mainly in the income of the trust estate that all these three parts of the sum of $623.30 should be charged to, and paid out of principal, while in behalf of those interested wholly or mainly in the principal, it is contended that they should all be charged to and paid out of the income. We are of the opinion that the latter contention is correct, because these parts of the total income tax payable by the trustees on account of real income received by them are ordinary, annually recurring tax expenditures by the trustees. This view was taken and applied by the supreme court of Massachusetts to income taxes payable by trustees by reason of the payment, out of income, of precisely the same kind of annuities, payable out of income if sufficient, but out of principal if necessary. *Holcombe* v. *Ginn, supra.* The matter is not so clear as to that part of the sum of $623.30 which is allocated to the amount of income transferred into the 20% reserve fund; but we believe that it should be treated in the same way for the same reason, in view of the fact that among the very first payments which the testator provides for, after providing for the collection of income, is for taxes, long before the provision for the division of the final remainder of the income into the portions of 20% and 80%.

As to the general question just considered, we instruct the trustees that the entire sum of $623.30, payable by them as the income tax based on real income, should be paid by them out of the general income of the trust estate and be deducted by them from such income in determining the sum which the

testator in the will describes as "the balance of said income," and of which, as stated *supra*, he directs 20% to be set aside for investment and ultimately to be added to the principal of the trust estate and the other 80% to be paid out to certain beneficiaries.

The last of the questions as to which our instructions are sought is presented by the complainants as executors and arises out of the following facts. The testator died on December 24, 1934. The federal income tax authorities made an additional assessment against him for the calendar year 1933. The claim against his estate therefor was disputed by the executors and was finally settled on June 4, 1936 by a compromise, under which the executors paid, in full payment of the claim, $53,009.74 for the principal and $7066.99 for interest thereon at the rate of 6% per annum from March 15, 1934 to June 4, 1936. The former amount was paid out of the principal of the estate. Of the latter amount $2463.86 was for interest to the date of the testator's death and is clearly chargeable to principal, and $4603.13 was for interest from that date to the date of payment, a period of one year, five months and ten days, being 8.6835% of the $53,009.74.

The sole question is whether all of this sum of $4603.13 should be charged against the income of the estate; or whether only so much of it should be so charged as would be the interest, on the same principal sum of $53,009.74 and for the same period of one year, five months and ten days, at the average yield of income for the entire estate for that period, which was 2.8907%, and the rest of this sum of $4603.13 should be charged to the principal of the estate. It is contended in behalf of the parties wholly or mainly interested in income that the latter alternative is the correct one, but no authority is cited in support of this contention. The general rule clearly seems to be that whatever sum has to be paid, for interest after the testator's death on an obligation of his existing at his death, is chargeable wholly to the in-

come of the estate. Dodge on Estate Administration and Accounting, 286. 1 Restatement of Law of Trusts, § 233, comment *e*.

So far as we are aware, there is no intimation in any of the authorities that a greater sum should be thus charged for interest, if the income of the estate has been at a greater rate than the rate of interest paid on the obligation, or that a less sum should be thus charged, if the income of the estate has been at a less rate. Such a rule might be theoretically more equitable, but in our judgment it would be generally impracticable of application and should not be adopted. We therefore instruct the complainants in the instant case that the interest after the death of the testator, which has been paid on the tax deficiency claim, should be charged wholly against the income of the estate.

On February 16, 1938, the parties may present a form of decree, in accordance with this opinion, for entry by the superior court.

*Comstock & Canning,* for complainants.

*William H. Edwards, Gerald W. Harrington, Edwards & Angell,* for respondents.

*Fred A. Otis,* for contingent interests and Maine Central Institute.