United States Trust Company of New York, Plaintiff and Counterdefendant Below, Appellee, v. Gwethalyn Jones, Winifred Gladwin, Herbert Jones, Owen B. Jones, Edward Herbert Bennett, Jr., and Edward H. Bennett, Defendants and Counterclaimants Below, Appellants, Nora Gladwin Fairbank et al., Defendants Below, Appellees.

### Gen. No. 45,486.

Opinion filed March 19, 1952. Rehearing denied April 4, 1952. Released for publication April 25, 1952.

WILSON & MCILVAINE, of Chicago, for appellants; J. F. DAMMANN, KENNETH F. MONTGOMERY, and PETER A. DAMMANN, all of Chicago, of counsel.

ISHAM, LINCOLN & BEALE, of Chicago, for certain appellee; CYRUS H. ADAMS, and GEORGE B. YOUNG, both of Chicago, of counsel. GARDNER, CARTON & DOUGLAS, of Chicago, for certain other appellee; ALFRED T. CARTON, and JAMES A. VELDE, both of Chicago, of counsel. CARL B. APLON, of Chicago, guardian *ad litem* of minor defendants and trustee for persons not in being.

MR. PRESIDING JUSTICE KILEY delivered the opinion of the court.

This is an action in chancery by a trustee for construction of the trust instrument with respect to the payment of capital gains tax. The chancellor construed the instrument so as to charge income, and not the corpus, with the tax. The income beneficiaries, referred to herein as the beneficiaries, have appealed.

The plaintiff trustee is a New York corporation authorized to do business in Illinois. In December 1916 it was made trustee under an agreement with David B. Jones of Chicago, Illinois. Under the agreement, Jones conveyed to the trustee 8,000 shares of New Jersey Zinc Company stock and Anglo-French bonds of par value $300,000. The conveyance was in trust for the benefit of Jones' five children. The issue of his deceased brother and Princeton University were made contingent remaindermen. David Jones died in August 1923 leaving his five children surviving.

The trust agreement divided the trust fund into five equal parts, each part to be administered as a separate trust for the benefit of one of the five children. In 1948 the original block of 8,000 shares of Zinc Company stock had increased to 82,500. The Anglo-French bonds had been disposed of and the proceeds of the sale reinvested, and 1,400 shares of Union Carbide and Carbon Corporation stock had been added to each of the five trusts. The Carbide stock was sold in 1948 at a profit in excess of $300,000, or more than $62,000 for each of the five trusts. The capital gains were divided equally and added to the corpus of each trust. In 1949, a federal tax was assessed on the capital gains, the proportionate share for each trust being about $12,000. The trustee paid the tax and has brought this suit for a judicial determination of whether the tax paid should be charged against income or corpus.

In 1925, Catherine Jones Bennett, one of the five children, died. Under Article Fourth of the agreement, her surviving issue were entitled to her share of the income. Her husband and son survived her.

They and the four living children of the settlor and the contingent remaindermen were named as defendants in this suit.

The pleadings made no issues of fact. The chancellor first decided, on the issue of law made under the complaint, that the capital gains tax was chargeable to income and not to corpus. The beneficiaries were then given leave to file a counterclaim. The chancellor decided on the issue of law made under the counterclaim that the tax payments from income did not constitute an accumulation of income in violation of the Illinois Act Restraining Directions in Conveyances, etc. (Thellusson Act), Ill. Rev. Stat. 1951, chap. 30, par. 153. [Jones Ill. Stats. Ann. 135.02.]

The question here is whether the chancellor's decree, embracing these decisions, is erroneous. The guardian *ad litem* and trustee for persons not in being is the only appellee who opposes the contentions of the beneficiaries.

Article Sixth of the trust agreement provides:

"Out of the income of the principal . . . trustee shall pay all taxes, assessments or other governmental charges which it may be required to pay . . . because or in respect of any part of the principal . . . under any present or future law of the United States, . . . any and all such taxes, assessments or other governmental charges lawfully imposed being charged as a lien on the said income, and in case of deficiency of said income upon the principal of the trust estate."

The trustee was obliged to pay a tax on the net income of the trust. Int. Rev. Code § 162 (b). The net income for tax purposes excludes all income of the trust distributed to the beneficiaries. Int. Rev. Code § 162 (b). Included in the gross income are the profits from the sale of the securities in 1948. Int. Rev. Code §§ 22 (a), 162 (b). The definition of these profits as income for tax purposes has judicial approval. *Mer-*

chants Loan and Trust Company v. Smietanka, 255 U. S. 509.

If the tax is paid from income, the trustee must pay an amount in excess of $15,000 from each trust over a four-year period to liquidate the tax obligation. This is because the trustee must withhold from distribution in 1950 the amount of the tax assessed in 1949. The amount withheld is not deductible as distributed income in 1950, and accordingly tax must be paid on it, this process continuing for four years. If the tax is paid out of corpus, there is not this problem.

Under the Illinois decisions which controlled when the trust agreement was made, the capital gains belonged to corpus. *DeKoven v. Alsop,* 205 Ill. 309, 319; *Vanatta v. Carr,* 229 Ill. 47, 54.

No Illinois case has construed a trust provision similar to Article Sixth as it applied to a capital gains tax. The Supreme Court of Rhode Island on "equitable principles as well as authority" directed that capital gains taxes should be charged against principal since they were not taxes on "real income." *Industrial Trust Company v. Winslow,* 60 R. I. 61, 197 Atl. 185. One of the authorities that court relied on was *Holcombe v. Ginn,* 296 Mass. 415, 6 N. E. (2d) 351. There the Supreme Judicial Court of Massachusetts directed that a capital gains tax should be charged against principal. The court thought the tax was an expense incidental to dealing with capital, and not an expense of collection of income; that the income tax law did not "obliterate" the true character of the tax; and that to impose the tax on income might seriously burden income beneficiaries in years when trust transactions were most profitable. In two cases, New York courts directed that capital gains taxes should be paid out of principal. *Gilbert v. Wise,* 192 Misc. 101, 78 N. Y. S. (2d) 533; *In re Lissberger's Estate,* 188 Misc. 811, 64 N. Y. S. (2d) 370.

■ The equitable principles on which the Rhode Island court relied were those which the Illinois Supreme Court has employed in determining where the burden of real estate taxes and special assessments lies, as between life tenants and remaindermen. *Patterson v. Johnson*, 113 Ill. 559; *Huston v. Tribbetts*, 171 Ill. 547; *Warren v. Lower Salt Creek Drainage District*, 316 Ill. 345. Our Supreme Court has invoked the principles in construing similar provisions of leases as applied to inheritance taxes (*Northern Trust Company v. Buck & Rayner*, 263 Ill. 222), and to income tax on rentals (*Young v. Illinois Athletic Club*, 310 Ill. 75). The guiding principle is that the onus should be placed where the substantial benefit was received. We think that these cases support the argument of the beneficiaries that in the absence of a clearly expressed provision to the contrary, courts will not construe instruments so as to impose a tax burden where it would not have rested in the absence of the provision.

■ It is our opinon, however, that Article Sixth is sufficiently clear to override what we consider to be the general rule in Illinois. This is so notwithstanding the general purpose of the trust which was to provide income for the children. Article Sixth directs the trustee to pay from income all "taxes . . . or other governmental charges" which it is required to pay "because or in respect of any part of the principal." The capital gains tax is a tax or government charge which the trustee has paid. The tax was paid because profits were made from the sale of part of the principal, and the profits became part of the principal.

In *Industrial Trust Company v. Winslow*, 60 R. I. 61, 197 Atl. 185, the trustee was to pay "from said income all taxes, assessments, ordinary and extraordinary . . . ." The court refused to presume that the testator was familiar with income taxes and with the

fact that capital gains often made up a large part of taxable income. This presumption, it said, was against clear provisions in the will that the testator's policy was to invest in high grade stocks and retain them unless the corpus was endangered, and which indicated no intention of payment of capital gains taxes by the trustee. In the Jones trust, however, the trustee was empowered to sell securities after his death according to its judgment, except for the Zinc Company stock. Furthermore, there were capital gains taxes paid out of income by the trustee from 1917 until David Jones' death and thereafter until 1947 with no amendment to charge the tax to corpus. This consideration, urged by the guardian *ad litem* is not based on an estoppel theory but offered as an aid to the court in its construction. The provisions of the trust in *Holcombe v. Ginn,* 296 Mass. 415, 6 N. E. (2d) 351, as set forth in *Parkhurst v. Ginn,* 228 Mass. 159, 117 N. E. 202, do not disclose any direction to the trustee with reference to the payment of capital gains taxes out of income.

In *Gilbert v. Wise,* 192 Misc. 101, 78 N. Y. S. (2d) 533, the direction in the trust indenture effectually stated the general rule of trust accounting that the tax should be borne by the interest primarily liable in the absence of a clear provision to the contrary. The direction in *In re Lissberger's Estate,* 188 Misc. 811, 64 N. Y. S. (2d) 370, did not contain the words "because or in respect of principal" as does the direction in the Jones trust. The New York court refused to interpret the direction so as to impose on income "any tax other than imposed upon the trust proper by reason of true income." These cases accordingly are distinguishable from the instant case. We think the chancellor construed Article Sixth correctly.

██ This conclusion raises the alternative point presented by the life beneficiaries. "The Thelluson act is not intended to defeat the intention of the

testator as to who should be entitled to property under his will but its purpose is to prevent indefinite accumulations of wealth.'' *Webb v. Webb,* 340 Ill. 407, 415. Under the Act, the beneficiaries here would be entitled to income accumulated in the trust in excess of the limits set up in the statute (*Kolb v. Landes,* 277 Ill. 440), because the periods within which income could be lawfully accumulated in the Jones trust have expired.

██ There is no express direction to accumulate income in the Jones trust instrument. This is not a case like *In re Maris' Estate,* 301 Pa. 20, 151 Atl. 577, where cash dividends which would have otherwise been distributed as income were directed to be paid into corpus. On the contrary, here the income is actually being expended. It is conceded that the capital gains in the Jones trust belong to principal and that the Thellusson Act does not affect accumulations of capital. The beneficiaries say that what is taken from income to pay the tax is effectually frozen into corpus.

No income which would have otherwise gone to the beneficiaries was paid into the trust. There is no direction here to pay into the trust a percentage of income as a reserve to pay capital gains taxes in future years. There is an accumulation of corpus and not income. No case has been cited which we consider persuasive authority for the contentions of the beneficiaries.

In *Hascall v. King,* 162 N. Y. 134, 56 N. E. 515, it was held that a direction to pay mortgages on trust property out of income was an unlawful accumulation. In the instant case, the capital gains tax is an obligation accruing as the result of a lawful increment to corpus. The effect of the direction as we have interpreted it is to preserve an increment to corpus created through sale of corpus assets. In the *Hascall* case, the increment to corpus was created through the use of income. We think this distinguishes the *Hascall*

372

case. We think the chancellor correctly decided that there was no unlawful accumulation under the Thellusson Act.

For the reasons given, the decree is affirmed.

*Decree affirmed.*

LEWE and FEINBERG, JJ., concur.