518

(No. 35265.—

PEARL THERESA MURPHY, Appellant, *vs.* THE NORTHERN
TRUST COMPANY *et al.,* Appellees.

*Opinion filed November 18, 1959.*

SEARS, STREIT AND TYLER, of Chicago, (BARNABAS F.
SEARS, LLOYD J. TYLER, JR., JAMES N. KOSMOND, and
RICHARD L. JOHNSTON, all of Chicago, of counsel,) for
appellant.

PARKHILL, SEVERNS AND STANSELL, of Chicago, for
appellee The Northern Trust Co., and EDWARD S. COATH,
of Chicago, for other appellees.

Mr. JUSTICE SCHAEFER delivered the opinion of the court:

The problem in this case concerns the disposition to be made of income which was directed to be accumulated in a testamentary trust for a longer period than the law allows.

William L. Murphy died July 25, 1937, leaving the residue of his estate in trust. His will directed the trustee to pay to his widow $300 a month from the net income of the trust, and to invade the principal if necessary to make the payments. The will also directed the trustee to accumulate the remainder of the income and add it to the principal, and, after the widow's death, to divide the principal, together with any accumulated income, into six equal shares, and to deliver one share to each of six named brothers and sisters of the testator. The will continued: "provided, however, that if any one of the said James R. Murphy, Vincent Murphy, Frank J. Murphy, John C. Murphy, or Jennie Stafford shall die prior to the time of this distribution, said Trustee shall pay over, convey and deliver the share to which the one so dying would have been entitled had he or she lived, to the lawful issue of that one, in equal shares, *per stirpes,* and if that one shall have no lawful issue then surviving, then the gift to which that one would have been entitled had he or she lived, shall lapse, and said Trustee shall divide the principal or corpus of said trust estate into one (1) less share than as hereinbefore provided; provided further, that in the event that my sister, Sadie Murphy, shall not be surviving at the time of this distribution, then the gift to which she would have been entitled had she lived, shall lapse, and said Trustee shall divide the principal or corpus of said trust estate into one (1) less share than as hereinbefore provided."

When the testator died in 1937, the Illinois "Thellusson Act" prohibited the accumulation of income for more than twenty-one years from the death of a testator, and provided that income directed to be accumulated contrary to

the provisions of the act should "go to and be received by such person or persons as would have been entitled thereto if such accumulation had not been directed." (Ill. Rev. Stat. 1937, chap. 30, par. 153.) The widow is still alive, and it is not disputed that the statute prohibits the accumulation of income after July 25, 1958.

The widow brought this action to construe the will. The only question that survives for determination in this court is what is to be done with the income accruing after July 25, 1958, above the amount necessary to pay the widow's annuity. This income, which has been released by the statute from the testator's direction to accumulate, is claimed by the widow on the one hand, and on the other by the testator's surviving brothers and sisters and the children of his two deceased brothers.

The trial court rejected the claim of the widow and decreed that the trustee should "distribute quarterly the remainder of the net income of the said trust estate in excess of said payments to plaintiff to those persons who * * * would on the date of each such distribution of income be entitled to share in the distribution of the principal or corpus of the trust estate were such principal or corpus distributable on that date and in the same proportions as such persons would share in the distribution of the principal or corpus of said trust estate were such principal or corpus then distributable." The Appellate Court affirmed, (20 Ill. App. 2d 244,) and we granted leave to appeal.

There have been conflicting intimations in several cases as to the proper solution of the problem now before us, but in none of them was it actually presented for decision or decided. (See, *e.g., Booth* v. *Krug,* 368 Ill. 487; *Webb* v. *Webb,* 340 Ill. 407; *French* v. *Calkins,* 252 Ill. 243; *United States Trust Co. of New York* v. *Jones,* 346 Ill. App. 365, reversed on other grounds, 414 Ill. 265; *Walliser* v. *Northern Trust Co.* 338 Ill. App. 264. Cf. Carey and Schuyler, Illinois Law of Future Interests, sec. 503.) The statute

directs that income received after the permitted period of accumulation is to go to such person or persons "as would have been entitled thereto if such accumulation had not been directed." (Ill. Rev. Stat. 1937, chap. 30, par. 153.) The problem is to determine whether the will indicates such a person or persons, and what is to be done if it does not.

The plaintiff claims the released income as life tenant, but as the defendants point out, she is limited under the will to an annuity of $300 per month, and to give her the income would be to give her something that the testator did not intend that she should have. The defendants' claim, however, is subject to the same objection. If, as the trustee argues, the will shows that the testator "had the firm intention that his widow should have no more than $300 per month for life," it also shows that he had an equally firm intention that none of the remaindermen should take anything under the will during his widow's life, and that only those who survived his widow should ever take. He specifically provided that the shares of those who died prior to the time of distribution that he fixed should lapse, and that no beneficiary could anticipate receipt of his or her share.

We see no more reason to use the statute as a basis for altering the will in favor of the remaindermen than to use it as a basis for altering it in favor of the widow, for whom a strong argument, based upon economic developments subsequent to the testator's death, has been made. The trustee's argument that "so long as the named beneficiaries are alive at the time distribution is to be made, the testator intended them to take," is true only in terms of the time of distribution fixed by the testator. The will does not direct a periodic distribution of income to designated persons, subject to the annuity payment. Under this will, the identity of the taker can not be separated from the time of the taking.

From the will alone it is impossible to identify either the life annuitant or the remaindermen as the person or persons who would have been entitled to the released income if the accumulation had not been directed. We are not permitted to guess how the testator would have met a contingency that he obviously did not foresee. (*Hampton v. Dill,* 354 Ill. 415; *Glaser v. Chicago Title and Trust Co.* 393 Ill. 447.) The presumption against intestacy, which is sometimes useful in determining the meaning of a will, is of no assistance here, because the gap in the testamentary disposition in this case is caused by the operation of the statute and not by any language of the will. What the testator intended is entirely clear. Nor do we think that the answer lies in characterizing the remainders as vested, for if they are vested they are also subject to being divested, and that is what creates the problem.

We think that the traditional solution is applicable here. "Income released from accumulation by the Act, when there is no present gift, goes to the residuary legatee, or if it is the income of the residue, or part of it, which the testator has directed accumulated, then to the next of kin; or if there be no next of kin, then to the Crown." (Gray, The Rule against Perpetuities, 4th ed., sec. 704 (1942).) In England under the original Thellusson Act, and in other States which have statutes similar to ours, income that is unlawfully directed to be accumulated under a residual clause is released to pass by intestate succession. (1 Jarman on Wills, 7th ed. (1930) 365; Gray, The Rule against Perpetuities, 3rd ed., (1915), secs. 701-705; 14 Amer. Jur., Perpetuities, sec. 51, p. 95; 70 C.J.S., Perpetuities, sec. 33, p. 623.) We hold, therefore, that the released income in this case passes by intestate succession.

The plaintiff has urged that if we should hold, as we do, that the released income is to be distributed as intestate property, we should go further and hold that the doctrine of equitable conversion operated to make it personal prop-

erty, so that by statute she is entitled to all of it. (Ill. Rev. Stat. 1937, chap. 39, par. 1.) The record shows only that at the time the testator executed his will in 1932 he owned a farm and that his will referred to a sale of that farm by the trustee. We do not know whether he owned that farm at the time of his death in 1937, or whether he then owned other real property. The facts that would be relevant to a characterization of the property from which the income is derived as real or personal are thus not before us, nor is it possible to say with certainty that such a characterization is necessary. We think, therefore, that it is inappropriate for us to consider now whether the doctrine of equitable conversion is applicable or whether there are other doctrines that might have a bearing.

The judgment of the Appellate Court must be reversed and the cause remanded to the circuit court for further proceedings not inconsistent with this opinion.

*Reversed and remanded.*